## CROWLEY *v.* CHRISTENSEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF CALIFORNIA.

No. 1317.  Submitted October 28, 1890. — Decided November 10, 1890.

The sale of spirituous and intoxicating liquors by retail and in small quan-
tities may be regulated, or may be absolutely prohibited, by State legisla-
tion, without violating the Constitution or laws of the United States.

The ordinances of the city and county of San Francisco, under which a
license to the defendant in error to sell intoxicating liquors by retail and
in small quantities was refused, having been held by the Supreme Court
of California not to be repugnant to the constitution of that State, that
decision is binding upon this court.

*Yick Wo* v. *Hopkins*, 118 U. S. 356, distinguished from this case.

In the courts of the United States the return to a writ of *habeas corpus* is
deemed to import verity until impeached.

THIS was an appeal from an order of the Circuit Court of
the United States for the Northern District of California dis-
charging, on *habeas corpus*, the petitioner for the writ, the
appellee here, from the custody of the chief of police of the
city and county of San Francisco, by whom he was held under
a warrant of arrest issued by the police court of that munici-
pality, upon a charge of having engaged in and carried on in
that city the business of selling spirituous, malt and fermented
liquors and wines in less quantities than one quart, without the
license required by the ordinance of the city and county.  The
ordinance referred to provided that every person who sold
such liquors or wines in quantities less than one quart should
be designated as "a retail liquor dealer" and as "a grocer
and retail liquor dealer," and that no license as such liquor
dealer, after January 1, 1886, " shall be issued by the collector
of licenses, unless the person desiring the same shall have ob-
tained the written consent of a majority of the board of police
commissioners of the city and county of San Francisco to carry
on or conduct said business; but, in case of refusal of such
consent, upon application, said board of police commissioners

shall grant the same upon the written recommendation of not less than twelve citizens of San Francisco owning real estate in the block or square in which said business of retail liquor dealer or grocery and retail liquor dealer is to be carried on;" and that such license should be issued for a period of only three months. The ordinance further declared that any person violating this provision should be deemed guilty of a misdemeanor.

The constitution of California provides, in the eleventh section of Article 11, that "any county, city, town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

The petitioner had, previously to June 10, 1889, carried on the business of retail liquor dealer in San Francisco for some years, under licenses from the board of police commissioners, but his last license was to expire on the 17th of that month. Previously to its expiration he was informed by the police commissioners that they had withdrawn their consent to the further issue of a license to him. He afterwards tendered to the collector of license fees, through which officer it was the practice of the board to issue the licenses, the sum required for a new license, but the tender was not accepted, and his application for a new license was refused. He then applied to the police commissioners for a hearing before them on the question of revoking their consent to the issue of a further license to him. Such hearing was accorded to him, and the time fixed for it was the 24th of June. But, before any hearing was had, he was arrested upon a warrant of the police court upon the charge of carrying on the business of a retail liquor dealer without a license. He then obtained from the Supreme Court of the State a writ of *habeas corpus* to be discharged from the arrest, but that court, on the 2d of August, 1890, held the ordinance valid and remanded him to the custody of the chief of police. He then applied for the allowance of an appeal from this order to the Supreme Court of the United States, but it was refused by the Chief Justice of the state court, and the Associate Justice of the Supreme Court of the United

States assigned to the circuit, who could have allowed the appeal, was absent from the State. On the 7th of August following a new complaint was made against the petitioner, charging him with unlawfully engaging in and carrying on in San Francisco the business of a retail liquor dealer without a license under the ordinance of the city and county. Upon this complaint a warrant was issued under which he was arrested. He thereupon applied to the Circuit Court of the United States for a writ of *habeas corpus*, which was issued.

In return to the writ, the chief of police, the appellant here, stated that he held the petitioner under the warrant mentioned by the petitioner and several other warrants issued by the police court of the city and county, upon different charges, made at different times, of his conducting and carrying on the business of a retail liquor dealer in San Francisco without a license, as required by the ordinance of the city and county. He also stated, among other things, that a further license to the petitioner was refused by the police commissioners, because they had reason to believe that the business was carried on by him under his existing license in such a manner as to be offensive, and violative of the criminal laws of the State and of the rights of others. In support of this charge it was averred that in that business the petitioner was assisted by one whom he represented and claimed to be his wife, and that she had on one occasion stolen one hundred and sixty dollars from a person who visited his saloon, and been convicted of the offence in the Superior Court of the city and county, and sentenced to be imprisoned for one year, and on another occasion had stolen a watch and a scarf-pin from a person at the saloon, and was held to answer for the charge. It was also averred that there were more than sixteen citizens of San Francisco owning real estate in the block on which the petitioner carried on his business. It did not appear that on the hearing of the application any proof was offered of the facts alleged either in the petition or in the return. The case was heard upon exceptions or demurrer to the return. To that part respecting the alleged larceny by the wife and her conviction, the demurrer was on the ground that the return also showed that an

appeal had been taken from the conviction, which was then pending, and that she might be acquitted of the offence charged.

Several objections were urged by the petitioner to the ordinance. Some of them were of a technical character, and could not be considered. Of the others only one was noticed, which was, that by it "the State of California, by its officers, denies to him the equal protection of the laws, and makes and enforces against him a law which abridges his privileges and immunities as a citizen of the United States," contrary to the Fourteenth Amendment to the Constitution of the United States.

The court held that the ordinance made the business of the petitioner depend upon the arbitrary will of others, and in that respect denied to him the equal protection of the laws, and accordingly ordered his discharge. 43 Fed. Rep. 243. From that order the case was brought to this court by appeal under §§ 763 and 764 of the Revised Statutes, this latter section as amended by the act of March 3, 1885, c. 353, 23 Stat. 437.

*Mr. Davis Louderback* and *Mr. J. D. Page* for appellant.

*Mr. Alfred Clarke* and *Mr. Joseph D. Redding* for appellee.

MR. JUSTICE FIELD, after stating the case as above, delivered the opinion of the court.

It is undoubtedly true that it is the right of every citizen of the United States to pursue any lawful trade or business, under such restrictions as are imposed upon all persons of the same age, sex and condition. But the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to the

equal enjoyment of the same right by others. It is then liberty regulated by law. The right to acquire, enjoy and dispose of property is declared in the constitutions of several States to be one of the inalienable rights of man. But this declaration is not held to preclude the legislature of any State from passing laws respecting the acquisition, enjoyment and disposition of property. What contracts respecting its acquisition and disposition shall be valid and what void or voidable; when they shall be in writing and when they may be made orally; and by what instruments it may be conveyed or mortgaged are subjects of constant legislation. And as to the enjoyment of property, the rule is general that it must be accompanied with such limitations as will not impair the equal enjoyment by others of their property. *Sic utere tuo ut alienum non lœdas* is a maxim of universal application.

For the pursuit of any lawful trade or business, the law imposes similar conditions. Regulations respecting them are almost infinite, varying with the nature of the business. Some occupations by the noise made in their pursuit, some by the odors they engender and some by the dangers accompanying them, require regulations as to the locality in which they shall be conducted. Some by the dangerous character of the articles used, manufactured or sold require, also, special qualifications in the parties permitted to use, manufacture or sell them. All this is but common knowledge, and would hardly be mentioned were it not for the position often taken, and vehemently pressed, that there is something wrong in principle and objectionable in similar restrictions when applied to the business of selling by retail, in small quantities, spirituous and intoxicating liquors. It is urged that, as the liquors are used as a beverage, and the injury following them, if taken in excess, is voluntarily inflicted and is confined to the party offending, their sale should be without restrictions, the contention being that what a man shall drink, equally with what he shall eat, is not properly matter for legislation.

There is in this position an assumption of a fact which does not exist, that when the liquors are taken in excess the injuries are confined to the party offending. The injury, it is true,

first falls upon him in his health, which the habit undermines; in his morals, which it weakens; and in the self-abasement which it creates. But, as it leads to neglect of business and waste of property and general demoralization, it affects those who are immediately connected with and dependent upon him. By the general concurrence of opinion of every civilized and Christian community, there are few sources of crime and misery to society equal to the dram shop, where intoxicating liquors, in small quantities, to be drunk at the time, are sold indiscriminately to all parties applying. The statistics of every State show a greater amount of crime and misery attributable to the use of ardent spirits obtained at these retail liquor saloons than to any other source. The sale of such liquors in this way has therefore been, at all times, by the courts of every State, considered as the proper subject of legislative regulation. Not only may a license be exacted from the keeper of the saloon before a glass of his liquors can be thus disposed of, but restrictions may be imposed as to the class of persons to whom they may be sold, and the hours of the day and the days of the week on which the saloons may be opened. Their sale in that form may be absolutely prohibited. It is a question of public expediency and public morality, and not of federal law. The police power of the State is fully competent to regulate the business — to mitigate its evils or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail; it is not a privilege of a citizen of the State or of a citizen of the United States. As it is a business attended with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the State;

nor is it one which can be brought under the cognizance of the courts of the United States.

The constitution of California vests in the municipality of the city and county of San Francisco the right to make "all such local, police, sanitary and other regulations as are not in conflict with general laws." The Supreme Court of the State has decided that the ordinance in question, under which the petitioner was arrested and is held in custody, was thus authorized and is valid. That decision is binding upon us unless some inhibition of the Constitution or of a law of the United States is violated by it. We do not perceive that there is any such violation. The learned Circuit Judge saw in the provisions of the ordinance empowering the police commissioners to grant or refuse their assent to the application of the petitioner for a license, or failing to obtain their assent upon application, requiring it to be given upon the recommendation of twelve citizens owning real estate in the block or square in which his business as a retail dealer in liquors was to be carried on, the delegation of arbitrary discretion to the police commissioners, and to real estate owners of the block, which might be and was exercised to deprive the petitioner of the equal protection of the laws. And he considers that his view in this respect is supported by the decision in *Yick Wo* v. *Hopkins*, 118 U. S. 356.

In that case it appeared that an ordinance of the city and county of San Francisco passed in July, 1880, declared that it should be unlawful after its passage "for any person or persons to establish, maintain or carry on a laundry within the corporate limits of the city and county of San Francisco without having first obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone." The ordinance did not limit the power of the supervisors to grant such consent, where the business was carried on in wooden buildings. It left that matter to the arbitrary discretion of the board. Under the ordinance the consent of the supervisors was refused to the petitioner to carry on the laundry business in wooden buildings, where it had been conducted by him for over twenty

years. He had, at the time, a certificate from the board of fire wardens that his premises had been inspected by them, and upon such inspection they had found all proper arrangements for carrying on the business and that all proper precautions had been taken to comply with the provisions of the ordinance defining the fire limits of the city and county; and also a certificate from the health officer that the premises had been inspected by him and were properly and sufficiently drained and that all proper arrangements for carrying on the business of a laundry without injury to the sanitary conditions of the neighborhood had been complied with. The limits of the city and county embraced a territory some ten miles wide by fifteen or more in length, much of it being occupied at the time, as stated by the Circuit Judge, as farming and pasture lands, and much of it being unoccupied sand-banks, in many places without buildings within a quarter or half a mile of each other. It appeared also that, in the practical administration of the ordinance, consent was given by the board of supervisors to some parties to carry on the laundry business in buildings other than those of brick or stone, but that all applications coming from the Chinese, of whom the petitioner was one, to carry on the business in such buildings were refused. This court said of the ordinance: " It allows without restriction the use for such purposes of buildings of brick or stone; but, as to wooden buildings, constituting nearly all those in previous use, it divides the owners or occupants into two classes, not having respect to their personal character and qualifications for the business, nor the situation and nature and adaptation of the buildings themselves, but merely by an arbitrary line, on one side of which are those who are permitted to pursue their industry by the mere will and consent of the supervisors and on the other those from whom that consent is withheld, at their mere will and pleasure. And both classes are alike only in this, that they are tenants at will, under the supervisors, of their means of living. The ordinance, therefore, also differs from the not unusual case, where discretion is lodged by law in public officers or bodies to grant or withhold licenses to keep taverns, or places for the sale of

spirituous liquors and the like, when one of the conditions is that the applicant shall be a fit person for the exercise of the privilege, because in such cases the fact of fitness is submitted to the judgment of the officer, and calls for the exercise of a discretion of a judicial nature."

It will thus be seen that that case was essentially different from the one now under consideration, the ordinance there held invalid vesting uncontrolled discretion in the board of supervisors with reference to a business harmless in itself and useful to the community ; and the discretion appearing to have been exercised for the express purpose of depriving the petitioner of a privilege that was extended to others. In the present case the business is not one that any person is permitted to carry on without a license, but one that may be entirely prohibited or subjected to such restrictions as the governing authority of the city may prescribe.

It would seem that some stress is placed upon the allegation of the petitioner that there were not twelve persons owners of real property in the block where the business was to be carried on. This allegation is denied in the return, which alleges that there were more than sixteen such property holders. As the case was heard upon exceptions or demurrer to the return, its averments must be taken as true. At common law no evidence was necessary to support the return. It was deemed to import verity until impeached. Hurd on Habeas Corpus, book 2, c. 3, §§ 8, 9 and 10 ; Church on Same, § 122. And this rule is not changed by any statute of the United States. It must, therefore, be considered as a fact in the case that there were more than sixteen owners of real estate in the block. But if the fact were otherwise, and there was not the number stated in the petition, the result would not be affected. If there were no property holders in the block, the discretionary authority would be exercised finally by the police commissioners, and their refusal to grant the license is not a matter for review by this court, as it violates no principle of federal law. We however find in the return a statement which would fully justify the action of the commissioners. It is averred that in the conduct of the liquor

business the petitioner was assisted by his wife, and that she was twice arrested for larcenies committed from persons visiting his saloon, and in one case convicted of the offence and sentenced to be imprisoned, and in the other held to answer. These larcenies alone were a sufficient indication of the character of the place in which the business was conducted, for the exercise of the discretion of the police commissioners in refusing a further license to the petitioner.

The order discharging the petitioner must be

*Reversed, and the cause remanded with directions to take further proceedings in conformity with this opinion, and it is so ordered.*