LINDSEY v. CITY OF LOUISVILLE.

(Division A. Jan. 13, 1930.)

[125 So. 558. No. 28406.]

Z. A. Brantley, of Louisville, for appellant.

Edward M. Livingston, of Louisville, for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellant, W. H. Lindsey, was convicted in the mayor's court of the city of Louisville, on a charge of unlawfully having in his possession, and keeping for sale and barter, certain alcoholic and intoxicating liquors, to-wit, liquid ginger preparation known and described as "Jake" and Jamaica ginger, which said preparation, when drunk to excess, will produce intoxication, without having first obtained a permit to so keep for sale, barter, and to be given away said preparation; and from this conviction and the sentence he appealed to the circuit court. In the circuit court he was again convicted, and was sentenced to pay a fine of one hundred dollars and to serve a term of thirty days in jail, and thereupon an appeal was prosecuted to this court.

Section 1 of chapter 201, Laws of 1926, section 2302 of Hemingway's 1927 Code, provides that it shall be unlawful for any person, firm, corporation, or association, to sell, barter, or give away, or keep for such purposes, certain designated alcoholic preparations, including liquid ginger preparations, which, when drunk to excess in the form sold, will produce intoxication, except for medicinal or household purposes, or for uses in cooking, baking, and purposes incidental to the treatment of disease; while section 2 of said chapter 201, section 2303, Hemingway's 1927 Code, provides that said alcoholic preparations shall not be kept for sale, barter, or to be given away, or sold, bartered, or given away, for the purposes permitted by section 1 of the act, by any person, firm, or corporation, except traveling salesmen en-

gaged in selling exclusively to wholesale and retail merchants, until such person, firm, or corporation has obtained a permit so to do from the mayor and board of aldermen of the incorporated city, town, or village within which said business is to be carried on, or the board of supervisors of the county, if the same is to be carried on without the corporate limits of any city, town, or village. Section 2 of this act further provides that "such permits may be granted by said authorities upon written application of the person, firm or corporation desiring to deal in such preparation, and the permit, if granted, shall be in writing, shall be spread at large upon the minutes of the proceedings of the mayor and board aldermen or councilmen or the board of supervisors, as the case may be, giving the name of the dealer, or dealers, the preparation or commodities which it covers, and shall be for a period of one year from the date of its being granted," and "the granting of a permit to any person, firm or corporation, to barter, sell, give away, keep for sale, or solicit orders for the sale of same shall be in the discretion of the mayor and board of aldermen or the board of supervisors, as the case may be, and they shall likewise have full authority and power, in their discretion, to revoke the same."

The general ordinance of the city of Louisville making all offenses under the penal laws of the state amounting to a misdemeanor offenses against the town when such offenses are committed within the corporate limits of the town, which was introduced in evidence, is in the following language:

"An ordinance declaring all violations of the penal laws of the state of Mississippi, under the Code of 1906, amounting to a misdemeanor, to be, and the same are hereby declared a violation of the ordinances of the town of Louisville, Winston county, state of Mississir"

"Sec. 1. Be it ordained by the mayor and board of aldermen of the town of Louisville, Miss., that all offenses under the Penal Laws of the state of Mississippi,

amounting to a misdemeanor, shall when said offenses are committed within the corporate limits of the said town, be offenses against the said town, and upon conviction thereof, the same punishment shall be ·imposed as provided by the laws of the state of Mississippi, with regard to such offenses against the state, not in excess of the maximum penalty which may be imposed by municipal corporations.

"Sec. 2. Be it further ordained that for good and sufficient cause this ordinance shall take effect and be in force from and after its passage. Approved and· adopted May 7th, 1912."

The evidence offered on behalf of the city amply supports a finding by the jury that the appellant kept for sale and sold, within the corporate limits of the city of Louisville, Jamaica ginger, an alcoholic preparation, which will produce intoxication when. drunk to excess, and that he had no permit from the mayor and board of aldermen of said city to so keep or sell such preparation for any purpose. The appellant seeks a reversal of this cause upon two grounds: First, that the court was without jurisdiction for the reason that the general ordinance of the city does not include and adopt chapter 201, Laws of 1926; and, second, that the said chapter 201, Laws of 1926, is unconstitutional and void for the reason that it grants to the board of supervisors or the mayor and board of aldermen, as the case may be, an arbitrary right and power to grant or refuse permits at will.

In support of the first contention that the offenses, defined in chapter 201, Laws of 1926, have never been made offenses against the city by any general ordinance so declaring, the appellant relies upon the fact that the title of the general ordinance of the municipality, which was offered in evidence, merely declares that it is "an ordinance declaring all violations of the penal laws of the state of Mississippi, under the Code of 1906, amounting to a misdemeanor, to be and the same are

hereby declared a violation of ordinances of the town of Louisville, Winston county, state of Mississippi.''

Section 3410, Code of 1906, section 6956, Hemingway's 1927 Code, provides that "all offenses under the penal laws of the state amounting to a misdemeanor shall, when so provided by a general ordinance of the municipality, also be offenses against the city, town or village in whose corporate limits the offense may have been committed to the same effect as though such offenses were made offenses against the city, town or village by separate ordinance in each case;'' while section 3406, Code of 1906, section 6952, Hemingway's 1927 Code, provides that "an ordinance shall not contain more than one subject, which shall be clearly expressed in its title." The subject indicated by the title to this ordinance is the adoption of the statute law defining offenses amounting only to misdemeanors as authorized by section 3410, Code 1906, section 6956, Hemingway's Code 1927, and although the title names only "violations of the penal laws of the state of Mississippi, under the Code of 1906," still the body of the act makes all offenses under the penal laws of the state of Mississippi amounting to a misdemeanor, offenses against the municipality, when committed within the corporate limits of the municipality. The title of the act sufficiently indicates the subject-matter and the purpose thereof, while the body of the ordinance clearly and expressly makes all offenses under the penal laws of the state amounting to a misdemeanor, offenses against the municipality when committed within the corporate limits thereof. The effect of this ordinance is to incorporate into the city ordinance all laws of the state of the grade of misdemeanors; and in the case of Smothers v. City of Jackson, 92 Miss. 327, 45 So. 982, it was held that such an ordinance "is prospective in its operation, and includes, not only the offenses named in the statute at the date of its adoption, but all offenses of the grade included within the ordinance which may be subsequently passed by the legis-

lature.'' The offenses defined in chapter 201, Laws of 1926, are misdemeanors, and since the general ordinance adopted by the municipality is prospective in its operation, it necessarily incorporated into the ordinances of the municipality the offenses defined in the said act of 1926.

In support of the view that the said chapter 201, Laws of 1926, is unconstitutional and void because it vests in the county and municipal authorities the power to arbitrarily grant or refuse permits to keep for sale or sell the named alcoholic preparations for the particular purposes permitted, the appellant relies principally upon the case of Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220. In that case the court had under review an ordinance of the city and county of San Francisco declaring that it should be unlawful after its passage ''for any person or persons to establish, maintain, or carry on a laundry within the corporate limits of the city and county of San Francisco without first having obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone;'' and in that case it was made to appear that ''in the practical administration of the ordinance consent was given by the board of supervisors to some parties to carry on the laundry business in buildings other than those of brick or stone, but that all applications coming from the Chinese, of whom the petitioner was one, to carry on the business in such buildings were refused.'' The court held this ordinance to be invalid, but in so doing expressly recognized a distinction between the ordinance there involved and that class of ordinances and laws where discretion is lodged with public officers or bodies to grant or withhold licenses for the sale of spirituous and intoxicating liquors.

It is the general policy of the laws of this state to absolutely prohibit the sale, or keeping for purposes of sale, of all alcoholic and intoxicating liquors, and chapter 201, Laws of 1926, prohibits the sale of the named

alcoholic preparations, except for medicinal and household purposes such as cooking and baking, and further limits or restricts the right to keep for sale or sell these intoxicating preparations for the named purposes, to those persons who have first secured a permit so to do from the mayor and board of aldermen if they are sold or kept for sale within a municipality, or from the board of supervisors of the county if the same are kept or sold outside of a municipality. The act further confers upon the mayor and board of aldermen or board of supervisors, as the case may be, the authority or power, in their discretion, to grant or refuse, or revoke, a permit to sell or keep for sale such intoxicating preparations.

The sale of intoxicating liquors is a proper subject of legislative regulation, and as said by Justice FIELD in the case of Crowley v. Christensen, 137 U. S. 86, 11 S. Ct. 13, 15, 34 L. Ed. 620: "Their sale in that form may be absolutely prohibited. It is a question of public expediency and public morality, and not of Federal law. The police power of the state is fully competent to regulate the business, to mitigate its evils, or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only." In the latter case there was involved the denial of a license to sell intoxicating liquor, and in distinguishing it from the Yick Wo case, supra, the court said: "It will thus be seen that that case was essentially different from the one now under consideration, the ordinance there

held invalid vesting uncontrolled discretion in the board of supervisors with reference to a business harmless in itself and useful to the community, and the discretion appearing to have been exercised for the express purpose of depriving the petitioner of a privilege that was extended to others. In the present case the business is not one that any person is permitted to carry on without a license, but one that may be entirely prohibited or subjected to such restrictions as the governing authority of the city may prescribe.''

The distinction between those classes of businesses which are harmless within themselves and useful to the community in which they are carried on and the sale of alcoholic and intoxicating liquors, was recognized by this court in the case of Perkins v. Ledbetter, 68 Miss. 327, 8 So. 507, in which the court had under consideration ''an act in relation to the sale of vinous and spirituous liquors,'' appearing in the Revised Code of 1880, chapter 39. In this act it was made unlawful to sell vinous and spirituous liquors without a license so to do, and the power to grant licenses was given to the board of supervisors where the applicant lived outside of a municipality, and to the corporate authorities of municipalities where the applicant proposed to carry on the business within a municipality. It was further provided that no license should be granted unless the applicant filed a petition for the issuance thereof, signed by a majority of the legal voters of the supervisors' district or the municipality, as the case might be, recommending the applicant to be of good reputation and a sober and suitable person to receive such license. The court held that while this statute conferred upon boards of supervisors and municipal authorities the right and power to grant a license upon the filing of a proper petition therefor, ''yet. if every legal voter signs a petition for license, and all the conditions of law are complied with ever so strictly, a right to have license as the result is not given; for, while power is conferred to grant li-

cense when everything required is done, no obligation is imposed to grant it; and it may be legally refused. . . . After all, it is discretionary with the board of supervisors or town authorities to refuse license, even when it would be lawful to grant it.'' In discussing the right of the county and municipal authorities to exercise discretion in the matter of issuing license under said chapter 39, Revised Code of 1880, the court further said: ''The scheme of the law, set forth in detail above, is to permit the evil of retail shops, if all the difficulties thrown in the way are surmounted, and the county or municipal authorities see proper to exercise the authority conferred to grant license. They *have power* to grant license, if a majority of the legal voters are *actively* in favor of it, and say so in the manner prescribed, but are not compellable to do it. In the exercise of their discretion, they may withstand the pressure of universal desire for retailing.''

The holding of the court in the above case that the power to grant licenses conferred by chapter 39, Revised Code of 1880, is not mandatory, and that the designated county and municipal authorities may, at will, refuse to grant a license, although the applicant has fully complied with all the legal requirements and precedent conditions, is applicable and controlling in the case at bar. The power conferred upon county and municipal authorities by chapter 201, Laws of 1926, to grant or refuse permits, is no broader or more arbitrary than that conferred by chapter 39, Revised Code 1880, to grant and refuse licenses; and in view of the holding of the court in Perkins v. Ledbetter, supra, the provisions of the said chapter 201 in reference to granting permits must be held to be a valid exercise of the legislative power of regulation of the sale of liquors.

The judgment of the court below will therefore be affirmed.

Affirmed.