**UNITED STATES of America,
Plaintiff,
v.
CHOW BING KEW, alias Sam Wahyou, alias Donald Harold Wahyou,
Defendant.**

Cr. No. 11378.

United States District Court
N. D. California, N. D.

May 28, 1956.

Lloyd H. Burke, U. S. Atty., Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

Forrest E. Macomber, Stockton, Cal., Kenneth G. McGilvray, Sacramento, Cal., for defendant.

WIIG, District Judge.

Count one of a two-count indictment charges the defendant with a violation of 18 U.S.C.A. § 911 [1] in that he falsely

---

1. The pertinent provisions of which are: "Whoever falsely and willfully represents himself to be a citizen of the United States shall be * * *" punished.

represented himself to be a citizen without having been admitted to citizenship. The government's proof on this count consisted of an application for a California alcoholic beverage license filed January 18, 1952, signed by the defendant. In response to a question contained in the application, "Are you a citizen of the United States?" the word "Yes" had been typed. Defendant admits he is not a citizen of the United States. He has resided continuously in this country since his arrival from China in 1929 as a merchant's son, and he has never been naturalized.

The laws of California do not require that a licensee of the type involved in this case must be a citizen of the United States. Accordingly, defendant urges that his affirmative answer was irrelevant, and therefore no violation of § 911 was committed by him.

In United States v. Achtner, 2 Cir., 1944, 144 F.2d 49, 52, the defendant in answer to a questionnaire of his employer, a private corporation, stated that he was a citizen of the United States. In affirming his conviction, the court held that the inquiry of the employer was legitimate and that "the representation of citizenship must still be made to a person having some right to inquire or adequate reason for ascertaining a defendant's citizenship; it is not to be assumed that so severe a penalty is intended for words spoken as a mere boast or jest or to stop the prying of some busybody, * * *." In United States v. Tandaric, 7 Cir., 1945, 152 F.2d 3, a conviction was affirmed where a similar false representation had been made to a prospective private employer. In neither of these cases was there any legal requirement that the defendant make a statement concerning his citizenship. Likewise, in United States v. Franklin, 7 Cir., 1951, 188 F.2d 182, 185, a false affirmative answer to the question " 'Citizen of U. S.?' " on an application for employment with a private corporation was held to be a violation of § 911. In the Franklin case, the court also upheld convictions based on the defendant's false statements that he was a citizen of the United States at the time he registered to vote in the state of Illinois, the law limiting the right to vote to citizens of the United States.

In De Pratu v. United States, 9 Cir., 1948, 171 F.2d 75, the indictment charged the defendant with making a false statement of citizenship in an application for a retail liquor license filed with the Montana Liquor Control Board, by stating he was a citizen of the United States, when in fact he was not such a citizen. At the time the application was filed, no one but a citizen was eligible for a liquor license under Montana law. The conviction was affirmed. Later, the same court in Smiley v. United States, 9 Cir., 1950, 181 F.2d 505, denied appellant's contention that the standard set up in De Pratu constituted the minimum requirement for conviction under § 911. The court said, at page 508:

"We hold that where some right to inquire exists or the person inquiring has a good and sufficient reason for learning the citizenship of the person asked, it is sufficient, and that the inquiring officer in this case was a person with a right to inquire and a sufficient reason for so doing."

In Smiley, the false representation as to citizenship was made by the defendant after arrest, and during the process of booking, in which information was elicited from him.

Sale and control of the use of intoxicating liquors have presented perplexing social and economic problems for centuries. That a state under its police power may regulate the control and traffic of intoxicating liquors for the reason that it concerns a business attended with danger to the community cannot be questioned. Crowley v. Christensen, 1890, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620.

Applying the foregoing law to the facts of this case, it is the opinion of the court that a false representation of citizenship on an application for a

state alcoholic beverage license constitutes a violation of § 911, even though the law does not require that the applicant be a citizen of the United States in order to obtain the license applied for. The statement was made to an agency of the state which had a right to inquire into the background and status of a prospective licensee, and in so doing to determine whether the applicant was a citizen of the United States.

▮ Defendant testified that he signed the application for a liquor license without reading it because it was his practice to sign any such document presented to him by his employees or by his attorney. This glib accused who described himself as the president of several corporations operating super-markets as well as engaged in the business of, "General merchant, grocery store, meat market, furniture store, drug store, department store, cattle business, rancher, and Northwestern Development Company, uranium business, farmer," and who has amassed a fortune of half a million dollars while so engaged, is in no position to relieve himself of criminal responsibility because of claimed ignorance. On the contrary, his brash carelessness, if such be the case, emphasizes his criminality.

Count two of the indictment charges the defendant with a violation of 18 U.S.C.A. § 1001[2] in that he made a false statement or representation to an investigator of the Immigration and Naturalization Service by telling him he was a citizen of the United States, knowing that such statement or representation was false.

▮ On April 14, 1953, Roy R. Anderson, an investigator with the Immigration and Naturalization Service, acting pursuant to an official request to investigate the defendant's citizenship status, met defendant at the latter's place of business. A previous attempt to contact defendant had failed, but defendant was aware of the fact that the Immigration and Naturalization Service had made such attempt, and that a representative of the Service "will be back to see me." Anderson identified himself as an investigator of the Immigration and Naturalization Service, advised the defendant that he had received information defendant was not a citizen of the United States and that he "was there to check with him and find out." At that time and place, defendant stated to Anderson, "I am a citizen of the United States. I was born in Sacramento, California." During this interview, defendant gave Anderson additional information which would aid Anderson in locating the records to verify defendant's statements. After giving his "real" name and date of birth (the name and date of birth of his alter ego), he gave Anderson the names of his "father" and "mother" to assist in checking the record of his birth. He also volunteered the information that a United States passport had been issued to him by the State Department and that he had made a trip to China, giving the dates of departure and return.[3]

In answer to Anderson's testimony, defendant testified his statements were made in good faith because he went through a form of adoption in Sacramento, California, in 1934, at which time he was led to believe that he had been legally adopted and thereafter assumed the name, date and place of birth of a deceased person into whose alter ego he was thereby placed. This explanation would seem plausible if made by one with less acumen than the defendant. He knew that the Immigration and Naturalization Service had tried to contact him the year before,

---

**2.** The pertinent provisions of which are: "Whoever, in any matter within the jurisdiction of any department or agency of the United States * * * makes any false, fictitious or fraudulent statements or representations * * * shall be * * *" punished.

**3.** These facts the court finds to be true on the basis of conflicting testimony.

and that several years prior thereto that same agency had refused to issue a re-entry permit to him because he had failed to satisfactorily establish that he was a citizen of the United States by virtue of his birth in Sacramento.

By his own testimony, defendant showed a keen awareness of his desire for and the desirability of American citizenship, so much so, in fact, that the court is satisfied he knew at all times the dual role he was playing. About two months after the April 1953 interview, when faced with a warrant of arrest for deportation, defendant upon the advice of and in the presence of his attorney, made a full disclosure of the facts relating to his background and the lie he had been living. This

revelation could and should have been made to Anderson on April 14, 1953, or, in the alternative, defendant could have remained silent and asked for time to consult with counsel. Instead, he voluntarily chose to lead the investigator on a trail which might have terminated the investigation and again delay the day of reckoning.

For a person of defendant's intelligence, ability, and experience, it would seem that the truth could have been spoken without the advice of counsel when he was confronted by a person who had a perfect right to make the inquiries Anderson made on April 14, 1953.[4]

Defendant's version of the April 14, 1953, interview [5] is colorful and colored for the trial of the case. It does, how-

4. Anderson was authorized to interrogate defendant as a person believed to be an alien, as to his right to be or to remain in the United States. 8 U.S.C.A. § 1357 (a) (1).

5. "Q. All right. Tell the Court the circumstances under which you met him (Anderson), who was present and all about it. A. I had the note from my girl, secretary, give it to me. The note say this—I didn't keep the note. The secretary give me the note. She said the Immigration Service from San Francisco come to see me during 1951 — no — yes, 1951, no — say '52, say he will be back to see me. The first time I see him, I can't tell you exactly the date, but during April.

"Q. April what year? A. 1953. 1953. He come to see me in the morning. I saw him. He is walking around the store, the main floor. So I was there pretty early so he didn't know me, I didn't know him. I asked him, 'Sir, are you looking for something?'

"He said he is looking for Sam Wah-You. I said, 'That is me.'

"He said, 'Like to talk to you.'

"I said, 'Sure. Come up.'

"It was early so I take him to my office, and he has another man with him, Chinese fellow. So he say, 'You speak good English.'

"I said, 'Yes, I don't need no interpreter.'

"So the Chinese fellow downstairs. Mr. Anderson and I went to my office. He asked me, he say 'What is your name?'

"I said, 'You know that, Sam Wah-You.'

"He say, 'Where you born?'

"I said, 'I born in Sacramento.' He says—then I told him, 'What is all about it? What you what?'

"He said, 'I am from Immigration.'

"'Oh', I said, 'You from Immigration. You have anything to show me you are from Immigration?'

"Then he show me like a pocket book with a badge in it. Excuse me. He show me that. So I say, well, I say, 'I can't talk to you about this matter. I am planning going away with the lawyer back east. Why can't we arrange another time when I come back? I either call you or you call me, about a couple of months, as soon as we come back, and I give you the true statement. And also when you come, you bring the machine, record it down.'

"I said, 'Don't bring the people here that write down. I don't like that. I would like to have my own words sticking into there.'

"So, I don't think we have been there very long, maybe five minutes, three minutes, I don't know, I can't tell you exactly, but very short time.

"He said, 'That is fine, and I be back.'

"So then he left.

"Q. All right. Now, at that time did you tell him that you were a citizen of the United States? A. I don't think so, definitely I say, no. I told him I born in Sacramento. He asked me where I am born and I say I was born in Sacramento."

ever, clearly indicate his awareness of the falsity of his statements and the necessity for skilful maneuvering.

A collection and discussion of cases construing § 1001 are contained in Knowles v. United States, 10 Cir., 1955, 224 F.2d 168, 171, 172, affirming a conviction for knowingly making or causing to be made a false and fraudulent statement and representation to internal revenue agents during the course of an investigation of the correctness of a taxpayer's returns.[6]

In United States v. Levin, D.C.D. Colo.1953, 133 F.Supp. 88, 90, Circuit Judge Pickett said:

> "When the charge involves statements made when not under oath a reasonable and sensible construction of the statute would be to limit its application to persons under legal obligation to speak or to give information to representatives of an agency or department of the United States who have authority to finally dispose of the matter being investigated, * * *."

In sum, the facts show that Anderson, as an investigator for the Immigration and Naturalization Service, pursuant to orders in a matter within the jurisdiction of the Service, after identifying himself and advising defendant of the nature of the investigation, gave defendant an opportunity to give information relative to whether he was a citizen of the United States. The statements made by defendant at the time were false, and were known by him to be false.

As to the second count, the court is satisfied from the evidence, which it believes to be true, that the government has sustained its burden of proof.

The court finds the defendant guilty as charged in counts one and two of the indictment, and the motions for judgment of acquittal as to counts one and two are denied.

---

6. Reference is made to Judge Murrah's analysis of the cases, especially Cohen v. United States, 9 Cir., 201 F.2d 386, and Marzani v. United States, 83 U.S.App. D.C. 78, 168 F.2d 133; also United States v. Levin, D.C., 133 F.Supp. 88, and United States v. Stark, D.C., 131 F.Supp. 190.