NORTH CENTRAL COUNTIES RETAIL LIQUOR STORES ASSOCIATION, APPELLANT, v. MUNICIPAL COUNCIL OF THE TOWNSHIP OF EDISON, DIVISION OF ALCOHOLIC BEVERAGE CONTROL OF THE STATE OF NEW JERSEY, AND R. H. MACY & CO., INC., t/a BAMBERGER'S NEW JERSEY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 6, 1961—Decided June 30, 1961.

352 <span style="background:black"></span>

Before Judges CONFORD, FREUND and KILKENNY.

*Mr. Samuel J. Davidson* argued the cause for appellant (*Mr. Samuel Moskowitz,* attorney).

*Mr. Herbert D. Kelleher* argued the cause for respondent R. H. Macy & Co., Inc., t/a Bamberger's New Jersey (*Messrs. Lum, Biunno and Tompkins,* attorneys).

*Mr. Samuel B. Helfand,* Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage Control (*Mr. David D. Furman,* Attorney General, attorney).

The opinion of the court was delivered by

CONFORD, S. J. A. D. This is an appeal from an order of the Director of the Division of Alcoholic Beverage Control (hereinafter "Director" and "Division") affirming the determination of the Municipal Council of the Township of Edison to renew the Class "C" Plenary Retail Consumption liquor license held by respondent R. H. Macy & Co., Inc., t/a Bamberger's New Jersey (hereinafter "Bamberger's"), for its department store located in the Menlo Park Shopping Center, Edison Township, New Jersey. The renewal was

approved by the Council on June 27, 1960, after a public hearing necessitated by an objection filed on behalf of appellant, North Central Counties Retail Liquor Stores Association (hereinafter "plaintiff"). Thereafter plaintiff appealed to the Director, a *de novo* hearing was held before a Hearer, and the latter rendered his report recommending conclusions and an order in favor of respondents. The report was approved and effectuated by order of the Director. This appeal ensued.

The gravamen of the appeal is the contention that the manner of conduct by Bamberger's of its liquor department in the store is violative of *N. J. S. A.* 33:1–12(1), which provides, in the case of a Plenary Retail Consumption License:

"* * * but this license shall not be issued to permit the sale of alcoholic beverages in or upon any premises in which a grocery, delicatessen, drug store or other mercantile business (except the keeping of a hotel or restaurant, or the sale of cigars and cigarettes at retail as an accommodation to patrons, or the retail sale of non-alcoholic beverages as accessory beverages to alcoholic beverages) is carried on. * * *"

Bamberger's operates a department store in a two-story building at the intersection of Woodbridge and Parsonage Roads in the Township of Edison. In the southeast corner of the second floor of this store it maintains a bar, restaurant and packaged goods department which is run as an integrated unit under a Class "C" Plenary Retail Consumption license. The area of the bar-restaurant-packaged goods section, approximating 4,000 square feet, is defined in Bamberger's license application as the "licensed premises" and is clearly delineated on a diagram accompanying the application. The remainder of Bamberger's store is unlicensed, and no sales of liquor are made there. Correspondingly, no sales of other merchandise are made in the liquor department.

The only means of access to the liquor department for store patrons is by entrance from the street to the first

floor, thence by escalator or elevator to the second floor. At the entrance to the escalator there is a posted store directory, which includes under the head "Upper Level" a designation, "Garden State Restaurant & Cocktail Lounge." The record does not indicate whether a similar directory is posted at the elevator, but this is probably a fair inference, since a directory circular published by the store shows "liquor" and "cocktail lounge" in the alphabetical list of departments and store locations. Upon leaving the escalator or elevator a patron enters general merchandising floor areas which he must traverse before reaching the licensed area. From the testimony, illustrated by a number of photographs taken on the premises, it appears that the merchandise departments immediately contiguous to the licensed area are those for sale of books and religious articles. Beyond the latter is a section where toys and games are sold. One may pass freely from these departments directly into the licensed area through an open space measuring about 30 feet obstructed only by a cashier's booth. Clearly visible from the books, toys and religious articles areas, and perhaps beyond, are two large overhead signs captioned: "Fine Wines and Liquors" and "Garden State Restaurant-Cocktail Lounge."

From the photographs in evidence it is clear, and not denied, that customers in the books and religious articles areas can look into both the packaged goods and bar sections of the licensed premises. Customers in the general merchandise areas mentioned (including minors who are shown in the photographs) have easy visibility of the bar in the licensed premises and of patrons being served there.

In recommending a denial of plaintiff's appeal, the Hearer, whose report was approved by the Director, said:

"Since alcoholic beverages may be sold only on the licensed premises, it is, perhaps, a complete answer to appellant's contention to point out that the license does not permit the sale of alcoholic beverages in any other portion of the licensed building where other mercantile business is carried on."

The Hearer then referred to plaintiff's reliance upon a number of state administrative rulings by one of the early predecessors of the Director (discussed with others later herein) holding that the statute here involved (or similar local ordinances) was violated if a customer could have direct access from the portion of a building used for a general merchandise business to a licensed plenary consumption area on the same property. The test stated in these rulings was whether the "respective businesses and their locations renders them substantially separate and distinct." The rulings required, in practical effect, a solid partition between the respective areas, or a door not available to customers but only for the use of staff. The Hearer (and Director) held, however, that a different problem was presented in respect of licensed premises "on the upper floors of department stores," these having assertedly been permitted "since the earliest days of the Division," and access allowed from other areas to licensed premises "where it has been determined that the licensed premises are substantially separate and distinct." However, no specific rulings were cited by the Hearer in his opinion-report in support of his explanation, nor have any been submitted in the brief submitted to us on behalf of the Division by the Attorney General. The conclusion was that "a solid partition" here would prevent store patrons from entering the licensed premises; "no problems have arisen"; a contrary ruling in this case would cause the closing of "many licensed premises which have operated for years"; and that the action of the municipal authorities should be affirmed, the evidence supporting their conclusion "that the licensed premises were separate and distinct."

The essence of plaintiff's position is that the operation of this department store is as an integrated business unit, in which the licensed operations constitute a department thereof not to be realistically differentiated in its relationship to the rest of the store and the business conducted therein from any of the ninety-odd other departments con-

ducted in the building. In that context, it maintains, the entirety of the building is a single "premises," and since a "mercantile business" is conducted therein, a plenary retail consumption license to permit the sale of alcoholic beverages "in or upon" the same premises is proscribed by the statute cited above.

The response by the licensee and the Attorney General is that all that is required by the statute is that the licensed premises be physically segregated from the portion of the premises where other merchandise is sold in such manner that the respective areas may reasonably be regarded as "substantially separate and distinct," so as to prevent "commingling of licensed and unlicensed activity," and that such requirement is met by the arrangements here maintained.

At the outset, we distinguish our recent decision in *Essex County Retail Stores Ass'n v. Newark, etc., Bev. Cont.,* 64 *N. J. Super.* 314 (*App. Div.* 1960). That case involved a plenary retail *distribution* license, not a *consumption* license, as here. In the case of the former, separation of the licensed from the general merchandise premises is required only if a municipal ordinance so directs. *N. J. S. A.* 33:1–12(3a) ; 64 *N. J. Super.,* at *pp.* 322, 323. Since Newark had no such ordinance, the present problem was not at all implicated in the *Essex County Retail Stores Ass'n* case, and nothing we passed on there bears upon a solution to the problem now before us.

There is no dispute between the parties as to what the uniform practical construction of the statute by the Division and its predecessor department has been so far as evidenced by written rulings. This is that there may be no direct access by customers between the licensed premises and those in which other kinds of merchandise are sold.

Illustrative is the exposition by the then Commissioner Burnett in *Re Johnson,* Bulletin 212, Item 10 (1937). There a question arose concerning the issuance of a consumption license for premises in a building which adjoined another building where the licensee conducted a grocery

store. There was a conflict of claims as to whether the two buildings were totally separate and apart or whether they were actually connected by a door. In the course of his advisory opinion, the Commissioner gave the Department's official interpretation of *R. S.* 33:1–12(1) and also of a like ordinance which the municipality had adopted:

"There is nothing in the law which would prevent a person holding a plenary retail consumption license from conducting a grocery business on other premises.

What the statute and your ordinance do require is that he not conduct the tavern and grocery on the same premises. In other words, the tavern and the grocery premises must be separate and distinct.

They are separate and distinct if there is no direct public access between them.

Thus, where two premises are side by side connected by a door at the rear of the dividing wall, not usable by customers of either place, the premises are substantially separate and distinct. See *Re Rockefeller*, Bulletin 200, Item I, and *Retail Liquor Distributors v. Atlantic City*, Bulletin 88, Item 5.

But, on the other hand, if instead of a mere service door connecting the tavern and the grocery, there is an archway or door through which the public may freely pass from one premises to the other, then the premises would not be substantially distinct. See *Shapiro v. Trenton*, Bulletin 34, Item 8; *Re Millville*, Bulletin 35, Item 15; *Reed v. Independence*, Bulletin 57, Item 10."

In the course of the opinion, Commissioner Burnett also indicated that if the door existed and provided direct public access between the buildings, a special condition requiring the licensee to sell the grocery business would not cure the matter. He stated, "Merely separation of the business is not enough; it is separation of the premises the statute requires." He also stated that the matter could be corrected, however, if the municipality imposed a special condition on the licensee requiring that the connecting doorway be closed up.

Other decisions of the Department consistently applying the stated interpretation of the statute, in addition to those cited in the *Re Johnson* matter, are *Hudson Bergen, etc., v. Gold's Drug Stores, et al.*, Bull. 253, Item 3 (1938); *Re Hershenstein*, Bull. 330, Item 7 (1939); *Zager v. Passaic*,

Bull. 385, Item 9 (1940); *Re D'Addetta,* Bull. 561, Item 10 (1943); *Re Fredricks,* Bull. 565, Item 4 (1943). The last two rulings cited were by Commissioner (later Governor) Driscoll. In the *Fredricks* matter he said: "Because of the provisions of *R. S.* 33 :1–12(1), the licensed premises and the grocery store cannot be operated as a single place of business with free access to the public from one to the other." *Cf. Peer v. Board of Excise Commissioners,* 70 *N. J. L.* 496 *(Sup. Ct.* 1904).

 Long-continued practical construction of a statute by the administrative authorities charged with its enforcement, particularly where contemporaneous with the adoption and early years of operation under the act, is persuasive evidence of its meaning if doubtful on its face. *Presbyterian Church of Livingston v. Div. of Alcoholic Beverage Control,* 53 *N. J. Super.* 271 *(App. Div.* 1958), certification denied 29 *N. J.* 137 (1959).

Having in mind the stringent public policy of this State, evidenced both in many other legislative provisions in *Title* 33 and in judicial utterances, toward the tight control of the liquor business so as to prevent its impairing the general health, welfare and morality, we discern sound justification for the construction of the statute reflected by the foregoing rulings. "As it [commerce in liquor] is a business attended with danger to the community, it may * * * be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils." *Crowley v. Christensen,* 137 *U. S.* 86, 91, 11 *S. Ct.* 13, 34 *L. Ed.* 620 (1890). The public policy of this State favors temperance, and the statutes governing sale of intoxicating liquor should be construed to effectuate this end. *Canada Dry Ginger Ale, Inc. v. F. & A. Distrib. Co.,* 28 *N. J.* 444, 455 (1958). As the act itself recites: "This chapter is intended to be remedial of abuses inherent in liquor traffic and shall be liberally construed." *R. S.* 33 :1–73.

 As we read the provisions of *N. J. S. A.* 33 :1–12(1) here involved, we discern somewhat more in the legislative

intent than, as the Attorney General suggests, the prevention of "the commingling of licensed and unlicensed activity," although that objective is certainly fundamental. Clearly, of course, liquor is not to be dispensed for consumption in a grocery store, nor groceries sold over a bar. But were these the only legislative objectives, less sweeping language would have been apt for the purpose. Moreover, other provisions of the act expressly or impliedly already carry out those limited purposes. The section we are dealing with has in contemplation any "mercantile business," etc. (with certain stated exceptions) which is "carried on" "in" certain "premises," and it prohibits the licensing of the sale of alcoholic beverages "in or upon" any such premises. Thus, whatever else the section intends to cover, it clearly envisages as one distinct condition of legislative concern the situation where there is, at one time, *both* a specific locale or place where alcoholic beverages are sold (by plenary retail consumption license) *and also* a specific locale or place where general merchandise is sold, with the licensed place or locale constituting a part of ("in or upon") the premises in which the general merchandise *business* is carried on. That arrangement is flatly prohibited by the statute.

It is self-evident, for example, that the statute could not be satisfied by merely drawing a chalk line around an area licensed for a bar and allowing general merchandise to be sold on the same open floor space outside the chalk line— a contention which Bamberger's advances on the definitional argument that the segregated physical floor space taken up by the licensed activity constitutes automatically different "premises" from the floor space not within the licensed chalk line merely because "premises" is defined in *N. J. S. A.* 33:1–1(s) as "the physical place at which a licensee is or may be licensed to conduct and carry on the * * * sale of alcoholic beverages." Obviously, the term "premises" as used in *N. J. S. A.* 33:1–12(1) is potentially broader than the licensed "premises" as defined in the definitional section of the act.

We suppose there would be little argument that the underlying objective—or at least one important objective—of the proviso now under consideration is to prevent the generality of the public which comes to a store to buy groceries or general merchandise from being exposed by proximity to the temptation of imbibing alcoholic beverages at a bar (or, where a local ordinance so provides, of buying packaged liquor). Another obvious policy consideration is that the general public, shopping, as here, for example, at book or toy counters, might include children who should not be exposed to the presumptively harmful effect of witnessing the drinking of liquor at a bar by patrons in perhaps various stages of sobriety. It is not beyond the realm of possible legislative policy, moreover, that the substantial portion of our population which looks askance at any degree or kind of drinking as a social or moral evil should be free to shop at a store for necessaries or conveniences (mayhap religious articles, as here) without being exposed to what may to them be the offensive sight or sound of drinkers at a public bar. We are, of course, not necessarily expressing the social or moral predilections of the members of the court; rather, we are recognizing the full potential range of public policy which legislative prophylaxis may legitimately serve in this sensitive area of police power control.

There is no doubt in our minds that the arrangements under which Bamberger's operates its liquor department and bar at the premises in question are offensive to the public policy underlying the statute. We need not repeat the facts already stated. Bamberger's runs this liquor department and bar in a manner completely indistinguishable from any other department. The fact that it is situated in a corner of the second floor does not distinguish it from, let us say, a music department which might be located in another corner, partly partitioned off for acoustical purposes, but open for unimpeded access to and from other portions of the floor. The liquor department and "cocktail lounge" is advertised both on the main floor and by large signs on the

second floor. Clearly, Bamberger's makes a concerted effort to influence those of its patrons who come to the store to buy general merchandise to also patronize its liquor department and bar. As the business in its entirety is here conducted, there is no fair escape from the conclusion that the whole physical enterprise and structure is a single "premises" and that both the letter and spirit of the act are being contravened.

Plaintiff does not argue, nor do the prior administrative rulings hold, that licensed plenary retail consumption premises may not lawfully exist in a building in which other merchandise is sold, even by the same owner of both businesses. The position is simply that the degree of physical separation of the respective different businesses, licensed and unlicensed, must be such that a patron of one cannot pass directly into the other. This seems to us, as it did to former Commissioners Burnett and Driscoll, an altogether reasonable minimum requirement for attaining the goal envisaged by the statute.

The Attorney General argues that because the licensed area here is but a small part of the department store as a whole, the test of "separation" should be applied more liberally in favor of the licensee than if the respective areas were more nearly equal in size. We fail to see why. There remains the direct impingement upon the policy of the statute at the point where the licensed and unlicensed areas converge, and the more people who come, in the first instance, to shop only in the latter, the greater the potential baneful influence of the former which the statute seeks to prevent. Nor are we impressed by the argument that many licenses for bars now exist in connection with restaurants which sell various odds and ends to their customers and therefore may not have the benefit of the statutory exception in favor of restaurants. The judicial function is to decide one case at a time. The sale of incidentals of certain kinds (perhaps candies, cookies, etc.) by restaurants may possibly be held to be a customary incident of the

restaurant business and therefore not to involve a loss of the restaurant exemption, regardless of our holding in the instant matter. But in any case, modifications of clear legislative policy in hardship situations are for treatment by the Legislature, not by the administrative agencies or the courts through interpretation amounting to amendment of the statute and subversion of its apparent policy.

The practical question remains as to whether and how the instant licensee can conduct its business without violation of the statute. Plaintiff concedes, and we agree, that the escalator properly separates the two floors into different premises. It argues, however, that the licensed area would have to be the sole business conducted on the second floor. We do not think the statute requires that extreme. The mere closing up of the open area on the second floor by a partition will not suffice, if a door remains for passage from unlicensed to licensed areas by the general public, as the administrative rulings clearly indicate. But if there were interposed between the two respective areas, otherwise physically walled off from each other, a neutral area or space from which a customer who had come there from an exit door in one of the areas, licensed or unlicensed, could elect whether to go into the other or to pass to the lower floor via the escalator, the intent and purpose of the statute as reflected by the administrative rulings would be satisfied. The same holds true as to the elevator. In other words, whatever the physical arrangements, there must intervene between the licensed and unlicensed areas on the second floor a neutral space or area, from which a customer can leave the floor, if he chooses, without having to enter either of the business areas mentioned.

The order of the Division is reversed, but without costs, and without prejudice to further proceedings before the Division or the Municipal Council which may eventuate in arrangements for the licensee to conduct its operations conformably with the views expressed herein.