550 P.2d 663

**ARIZONA STATE LIQUOR BOARD OF the DEPARTMENT OF LIQUOR LICENSES AND CONTROL, Appellant,**

v.

**Cosmo Luigi ALI, d/b/a DaVinci Restaurant, for a Series #7 Original License, Application #566, Appellee.**

**No. 2 CA–CIV 2067.**

Court of Appeals of Arizona, Division 2.

June 15, 1976.

Rehearing Denied July 16, 1976.
Review Granted Sept. 28, 1976.

Bruce E. Babbitt, Atty. Gen., by Charles E. Buri, Asst. Atty. Gen., Tucson, for appellant.

Dominic Piccirilli, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

The main question which surfaces in this appeal is whether the statutory exclusion of aliens from obtaining a spirituous liquor license constitutes a denial of equal protection of the law.

Appellee is a 38 year-old permanent resident alien who has been a resident of the United States and Arizona since November 17, 1970. He is married, has no criminal record, is the owner of DaVinci Restaurant on Fort Lowell Road in Tucson, Arizona and has declared his intent to become a citizen of the United States.

On November 4, 1974, appellee applied to the State of Arizona Department of Liquor Licenses and Control for issuance of a Series #7 spirituous liquor license.

After a hearing, the State Liquor Board disapproved the application based on the fact that appellee was not a citizen of the United States as required by A.R.S. Sec. 4–202(A).

Appellee appealed the decision of the State Liquor Board to superior court, alleging that the proscription of A.R.S. Sec. 4–202(A) was violative of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The court reversed the Board's decision, declaring unconstitutional the requirement of A.R.S. Sec. 4–202(A) that every spirituous liquor licensee shall be a citizen of the United States. The State Liquor Board of the Arizona Department of Liquor Licenses and Control now appeals.

Appellant contends that (1) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution does not apply to the case sub judice; (2) A.R.S. Sec. 4–202(A) is necessary and proper to protect substantial interests of the citizenry and (3) A.R.S. Sec. 4–202(A) is necessary to protect the state's resources.

The sole basis for appellant's refusal to issue a license to appellee is A.R.S. Sec. 4–202(A) which provides:

"Every spirituous liquor licensee, other than a club licensee, a corporation licensee, a hotel-motel licensee, or a restaurant licensee shall be a citizen of the United States and a bona fide resident of the state. If a partnership, each partner shall be a citizen of the United States and a bona fide resident of the state. If a corporation, it shall be a domestic corporation or a foreign corporation which has qualified to do business in this state, and shall hold its license through an agent."

The leading principles governing the case at bar were recently enunciated in *Graham v. Richardson*, 403 U.S. 365, 371–372, 91 S.Ct. 1848, 1851–1852, 29 L.Ed.2d 534 (1971), wherein the court announced:

"The Fourteenth Amendment provides, '[N]or shall any State deprive any per-

**18**

son of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' It has long been settled, and it is not disputed here, that the term 'person' in this context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside. *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886); *Truax v. Raich,* 239 U.S. 33, 39, 3 S.Ct. 7, 9, 60 L.Ed. 131 (1915); *Takahashi v. Fish & Game Comm'n,* 334 U.S., at 420, 68 S.Ct., at 1143.

\* \* \* \* \* \*

Under traditional equal protection principles, a State retains broad discretion to classify as long as its classification has a reasonable basis. *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S. Ct. 337, 340, 55 L.Ed. 369 (1911); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 1955); *Morey v. Doud,* 354 U.S. 457, 465, 77 S.Ct. 1344, 1350, 1 L.Ed.2d 1485 (1957); *McGowan v. Maryland,* 366 U.S. 420, 425–427, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961). This is so in 'the area of economics and social welfare.' *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). But the Court's decisions have established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority (see *United States v. Carolene Products Co.,* 304 U.S. 144, 152–153, n. 4, 58 S.Ct. 778, 783–784, 82 L.Ed. 1234 (1938)) for whom such heightened judicial solicitude is appropriate. Accordingly, it was said in *Takahashi,* 334

U.S., at 420, 68 S.Ct., at 1143, that 'the power of a state to apply its laws exclusively to its alien inhabitants as a class is confined within narrow limits.' " (Footnotes omitted)

These same principles were recognized in *Purdy & Fitzpatrick v. State,* 71 Cal.2d 566, 79 Cal.Rptr. 77, 456 P.2d 645 (1969), where the court held that discrimination on the basis of alienage invokes a strict standard of review. Similarly, in *Raffaelli v. Committee of Bar Examiners,* 7 Cal.3d 288, 101 Cal.Rptr. 896, 496 P.2d 1264 (1972) the court noted that particular alien groups and aliens in general have suffered prejudice and that a special mandate compelled them to guard the interests of aliens from the ever-present risk of prejudice. The *Raffaelli* court went on to hold that courts should approach discriminatory legislation with special solicitude. It is not only the basis of discrimination—alienage—which prompts the concern of the courts, but the method by which that discrimination is often practiced, i. e., by totally excluding aliens from engaging in certain businesses. *Raffaelli,* supra, at 7 Cal.3d 292–293, 101 Cal.Rptr. 896, 496 P.2d 1264. The state may not arbitrarily foreclose to any person the right to pursue an otherwise lawful occupation. Any limitation on the opportunity for employment impedes the achievement of economic security, which is essential for the pursuit of life, liberty and happiness; courts sustain such limitations only after careful scrutiny. *Purdy v. Fitzpatrick,* supra.

Statutes analogous to A.R.S. Sec. 4–202 (A) that make distinctions between classes of its citizens are accustomed to judicial scrutiny. The aforementioned principles have been applied to strike down as violations of equal protection of the law, state statutes excluding aliens from a variety of occupations.[1]

1. " . . . (See, e. g., *Yick Wo v. Hopkins* (1886) supra, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (operating a public laundry); *Truax v. Raich* (1915) supra, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed.2d 131 (requirement that four out of five employees be citizens); *Takahashi v. Fish & Game Comm'n* (1948) supra, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed.

■ A state can require high standards in licensing liquor applicants, A.R.S. Sec. 4–202, but any qualifications must have a rational connection with the applicant's fitness to hold that license. In applying permissible standards a state cannot exclude an applicant where there is no basis for finding that he or she fails to meet its standards or where its action is invidiously discriminatory. We recognize the importance of leaving states free to set their own licensing laws, but it is equally important that the states not exercise their power in an arbitrary or discriminatory manner.

With these principles in mind, we now reach the questions presented in the case at bar; whether being a citizen bears a rational relationship to appellee's fitness to have a liquor license and hence, whether the citizenship requirement in A.R.S. Sec. 4–202 (A) constitutes arbitrary and invidious discrimination in violation of the equal protection clause.

■ Initially appellant contends that the power of the states over intoxicating liquor, as conferred by the Twenty-first Amendment to the United States Constitution, is not bounded by the proscription of the Fourteenth Amendment. Appellant argues that when the constitutionality of the state statute concerning the regulation and control of liquor is involved we are dealing with an area of law that is unique, *Garcia v. Arizona State Liquor Board*, 21 Ariz. App. 456, 520 P.2d 852 (1974), and a business which is not one of the common or natural occupations of the community.

The Twenty-first Amendment extends to the states the absolute power to prohibit or limit traffic of intoxicating liquors and associated activities within their own borders. Appellant refers us to *Seidenberg v. McSorleys' Old Ale House, Inc.,* 317 F.Supp. 593, 600 (D.C.1970) wherein the court quoted from *Joseph E. Seagram & Sons, Inc. v. Hostetter,* 16 N.Y.2d 47, 262 N.Y.S. 2d 75 at 79, 209 N.E.2d 701 at 704:

> " 'A long history of regulation, control, price fixing, place of time and sale setting, and outright extinction lies behind the liquor business in this country since Colonial times, and it is too late today to suggest that the rights of those who choose to engage in it are on a constitutional or legal parity with the rights of people who trade in bicycles, or cosmetics, or furniture.' "

In *Goesaert v. Cleary,* 335 U.S. 464, 465, 69 S.Ct. 198, 199, 93 L.Ed.2d 163 (1968), the court remarked:

> "The Fourteenth Amendment did not tear history up by the roots, and the regulation of the liquor traffic is one of the oldest and most untrammeled of legislature powers."

See also, *Kaname Tokaji v. State Board of Equalization,* 20 Cal.App.2d 612, 67 P.2d 1082 (1937), where it was held that a person has no inherent right to deal in intoxicating liquors.

Appellant further argues that the Twenty-first Amendment makes plenary the power of the states over trafficking in intoxicating liquors and in support of this prop-

1478 (commercial fishing in California offshore waters).) More recently, the courts have extended this constitutional protection both to occupations and to the receipt of governmental social benefits. Thus in *Purdy & Fitzpatrick* we declared unconstitutional an exclusion of aliens from employment on public works. In *Graham v. Richardson* (1971) supra, 403 U.S. 365, 91 S.Ct. 1848, the United States Supreme Court invalidated statutes of two states denying welfare benefits to persons who are not citizens or, if aliens, have not resided in this country for 15 years. In *Chapman v. Gerard* (3d Cir. 1972)

456 F.2d 577, the circuit court held unconstitutional an exclusion of alien students from a public scholarship fund. In *Dougall v. Sugarman* (S.D.N.Y.1971) 330 F.Supp. 265, the district court held that a state statute preventing aliens from applying for competitive civil service positions offended the equal protection clause. And in *Hosier v. Evans* (D.V.I.1970) 314 F.Supp. 316, that clause was invoked to strike down a refusal to enroll the children of alien temporary workers in the local public school system." *Raffaelli,* supra, at 7 Cal.3d 293, 101 Cal.Rptr. 899, 496 P.2d 1267.

osition refers us to *Bartemeyer v. State of Iowa,* 18 Wall. 129, 85 U.S. 129, 21 L.Ed. 929 (1878) where it was said that prior to the adoption of the Fourteenth Amendment, state enactments, regulating or prohibiting traffic in intoxicating liquors, raised no question under the Constitution of the United States. Such legislation was left to the judgment of the respective states, subject to no other limitations than those imposed by their own constitutions or by the general principles supposed to limit all legislative power. The *Bartemeyer* court went on to say that the right to sell intoxicating liquors is not one of the rights growing out of U. S. citizenship. In *Muglar v. State of Kansas,* 123 U.S. 623, 8 S.Ct. 273, 296, 31 L.Ed. 205 (1887), the court remarked:

"In *Beer Co. v. Massachusetts,* 97 U.S. [25] 33, [24 L.Ed. 989], it was said that, 'as a measure of police regulation, looking to the preservation of public morals, a state law prohibiting the manufacture and sale of intoxicating liquors is not repugnant to any clause of the constitution of the United States.' Finally, in *Foster v. Kansas,* 112 U.S. 206, 5 S.Ct. 97, the court said that the question as to the constitutional power of a state to prohibit the manufacture and sale of intoxicating liquors was no longer an open one in this court. These cases rest upon the acknowledged right of the states of the Union to control their purely internal affairs, and, in so doing, to protect the health, morals, and safety of their people by regulations that do not interfere with the execution of the powers of the general government, or violate rights secured by the constitution of the United States. The power to establish such regulations, as was said in *Gibbons v. Ogden,* 9 Wheat. [1] 203, [6 L.Ed. 23], reaches everything within the territory of a state not surrendered to the national government."

Appellant asserts that the United States Constitution in no manner secures for aliens the right or privilege of trafficking in intoxicating liquors. The court, in *Crowley v. Christensen,* 137 U.S. 86, 91, 11 S.Ct. 13, 15, 34 L.Ed. 620, 624 (1890) remarked:

"There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only."

More recent authorities have acknowledged that the police power of the states over intoxicating liquors is extremely broad, encompassing the authority to require that sellers of those products be licensed, *Arizona State Liquor Board v. Poulos,* 112 Ariz. 119, 538 P.2d 393 (1965), and that such a license merely reflects the issuance of a temporary privilege which is, in effect, a mere permit to engage in a business subject to the regulation of the state. *Hooper v. Duncan,* 95 Ariz. 305, 389 P.2d 706 (1964), *Clark v. Tinnin,* 81 Ariz. 259, 304 P.2d 947 (1956). In *People v. Crane,* 214 N.Y. 154, 108 N.E. 427, 432 (1915), the court announced:

"It must also be evident that nothing in this opinion gives countenance to the view that the government may deny to aliens the right to engage in any private trade or calling on terms of equality with citizens. *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220; *Matter of Parrott* (C.C.) 1 F. 481. If the calling is one that the state, in the exercise of its police power, may prohibit either absolutely or conditionally by the exaction of a license, the fact of alienage may justify a denial of the privilege. *Patsone v. Pennsylvania,* 232 U. S. 138, 34 S.Ct. 281, 58 L.Ed. 539; *Comm.*

*v. Patsone,* 231 Pa. 46, 79 A. 928; *Comm. v. Hana,* 195 Mass. 262, 81 N.E. 149, 11 L.A.A.(N.S.) 799, 22 Am.St.Rep. 251, 11 Ann.Cas. 514; *Bloomfield v. State,* 86 Ohio St. 253, 99 N.E. 309, 41 L.R.A. (N.S.) 726, Ann.Cas.1913D, 629; *State v. Travelers' Ins. Co.,* 70 Conn. 590, 600, 40 A. 465, 66 Am.St.Rep. 138. There must, however, be some relation in such cases between the exclusion of the alien and the protection of the public welfare. But, subject only to the exercise of the police power, it is true that, in dealings between man and man, the alien and the citizen trade and labor on equal terms."

We are aware of the uniqueness of the liquor industry and the dangers it posed in the past. However, we are also aware that laws and protections are now available and enforced, thus reducing its negative impact on society.

In our opinion, the old state and federal cases cited by appellant are of doubtful validity in light of the aforementioned recent Supreme Court cases and, more specifically, in view of the holdings in *Takahashi v. Fish & Game Comm'n,* 334 U.S. 410, 420, 68 S.Ct. 1138, 1143, 92 L.Ed. 478 (1948), wherein the court declared that "the power of a state to apply its laws exclusively to its alien inhabitants as a class is confined within narrow limits," and *Graham v. Richardson,* supra.

It is within this framework and through application of the principles set forth in *Graham v. Richardson,* supra, *Raffaelli v. Committee of Bar Examiners,* supra, and *Purdy & Fitzpatrick v. State,* supra, that we now test the validity of A.R.S. Sec. 4–202(A) and appellant's arguments.

■ While the police power of the states over intoxicating liquors is extremely broad, we do not agree with appellant that the power of the states to govern in this area is not limited by the Equal Protection Clause. The Twenty-first Amendment to

the United States Constitution, Sec. 2 provides:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

From this amendment the states derived the power to prohibit or limit the traffic of intoxicating liquors and associated activities within their borders. Additionally, states have always had the power to regulate, restrain or prohibit whatever is injurious to the public health and morals. *Mugler v. State of Kansas,* supra. However, we are not convinced, nor has appellant come forth with authority to substantiate its claim, that the Equal Protection Clause of the Fourteenth Amendment has no application to liquor licensing statutes.

We believe the case of *California v. LaRue,* 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972) is very instructive with regard to this issue. There, the court stated:

"While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals. . . ."

The court further said that by reason of the Twenty-first Amendment a state is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption, within its borders. However, it qualified the state's power in this area by stating that the Twenty-first Amendment did not supersede all other provisions of the United States Constitution in the area of liquor regulations.[2]

2. See Justice Stewart's concurring opinion where he remarks that the Twenty-first Amendment does not empower a state to act with total irrationality or invidious discriminaton in controlling the distribution and dispensation of liquor within its borders.

Although the state's broad power to regulate the distribution of liquor and to enforce health and safety regulations is not to be doubted, we conclude that the power may not be exercised so as to stifle the Equal Protection Clause of the Fourteenth Amendment.

In *Federal Distillers, Inc. v. State,* 229 N.W.2d 144 (1975), the Supreme Court of Minnesota, citing *California v. LaRue,* supra, and *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) it was held that the Twenty-first Amendment does not empower the states to invade equal protection and due process constitutional rights guaranteed by the Fourteenth Amendment. See also *Sail'er Inn, Inc. v. Kirby,* 5 Cal.3d 56, 95 Cal.Rptr. 329, 485 P.2d 529 (1971), where the court held that the power of the state to regulate alcoholic beverages is necessarily subject to the demands of the equal protection clause of the Fourteenth Amendment.

Appellant further claims that trafficking in intoxicating liquors is not a fundamental right or a personal freedom or opportunity protected and secured by the Fourteenth Amendment. First, we are not determining whether appellee has a constitutionally protected fundamental right to hold a liquor license. Rather, we are determining whether he has a fundamental right to be free from discrimination based solely upon his status as a resident alien. Moreover, the United States Supreme Court, *in Graham v. Richardson,* supra, has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a right or as a privilege.

■ Second, as stated previously, it has long been recognized that a lawfully admitted resident alien is a "person" within the meaning of the Fourteenth Amendment's directive that a state must not "deny to any person within its jurisdiction the equal protection of the laws." *In re Griffiths,* 413 U.S. 717, 719–720, 93 S.Ct. 2851, 2854, 37 L.Ed.2d 910 (1973); *Yick Wo v. Hopkins,* supra. This protection specifically extends to aliens who work for a living

in the common occupations of the community. *Truax v. Raich,* supra. The ownership of a restaurant is one of the common occupations in the community and the serving of liquor in such establishments is quite prevalent.

The discriminatory provision in A.R.S. Sec. 4–202(A), requiring United States citizenship places too great a burden on constitutional freedoms. Accordingly, we must conclude that the Equal Protection Clause of the Fourteenth Amendment applies in circumstances such as the case sub judice where a state statute involving the regulation and control of liquor is attacked as being arbitrary and discriminatory.

■ The Arizona legislature has predicated eligibility for a Series 7 liquor license upon United States citizenship. For this classification to withstand attack as being discriminatory against aliens, it must not only reasonably relate to the purpose of the law, but the state has the burden of establishing that its use of the classification is necessary to the accomplishment of a legitimate state interest and that the law serves to promote a compelling state interest. *Purdy & Fitzpatrick,* supra. With these principles in mind, we will measure the various state interests appellant contends are served by A.R.S. Sec. 4–202(A).

■ Appellant argues that the classification embodied in A.R.S. Sec. 4–202(A) assures that those undertaking this calling are sufficiently acquainted with our institutions and way of life to enable them to appreciate the relation of this particular business to our entire social fabric. *Bloomfield v. State,* 86 Ohio 253, 99 N.E. 309 (1912). This appreciation, in turn, is necessary in order to minimize the evils attending trafficking in intoxicating liquor. Appellant further contends that A.R.S. Sec. 4–202(A) reflects legislative judgment that trafficking in intoxicating liquor by aliens presents a greater problem than such trafficking by citizens.

■ We do not find appellant's arguments persuasive. As we have stated,

statutes enacted by states, pursuant to the authority of the Twenty-first Amendment, will be upheld under Fourteenth Amendment analysis, if a reasonable basis can be shown for the regulation. States have permissible and substantial interest in protecting the welfare, health, peace, temperance, and safety of their citizens from those dangers and vices associated with the trafficking of intoxicating liquors. *Mendelsohn v. Superior Court,* 76 Ariz. 163, 261 P.2d 983 (1953). However, appellant's rationale assumes that only United States citizens may be expected to keep their liquor businesses free from the dangers and vices which have prompted restrictive legislation in this area.

We are unable to comprehend, nor has it been demonstrated to us, why aliens cannot appreciate American institutions. Resident aliens, like citizens, pay taxes, support the economy, serve in the armed forces and contribute in myriad other ways to our society. In re *Griffiths,* supra. It has not been shown that aliens cannot traffic in intoxicating liquors without falling prey to the inherent dangers and vices which have brought about legislation such as A.R.S. Sec. 4–202(A). Appellant has not presented us with any legitimate state purposes that could justify this kind of discrimination.

■ It is further argued by appellant that the Arizona statutory classification passes constitutional scrutiny as necessary to preserve for its citizens a limited state resource; namely, the spirituous liquor license. The state is not required to dedicate its own resources to citizens and aliens alike, *People v. Crane,* supra, but

may limit the enjoyment of the common property or resources of the people of the state to its citizens as against both aliens and the citizens of other states. *Truax v. Raich,* supra.

In *Miranda v. Nelson,* 351 F.Supp. 735 (D.Ariz.1972), the court held that any state legislative attempt to exclude the state's permanent resident aliens from any lawful pursuit of employment solely because of alienage ran afoul of the supremacy clause.[3] The Court in *California v. LaRue,* supra, held that any state legislation, even when aided by the Twenty-first Amendment, must be shown to have a rational connection with a permissible state purpose. It is manifest that the reasons advanced by appellant in justification of the discriminatory effect of A.R.S. Sec. 4–202(A) upon aliens fall far short of establishing either a legitimate or compelling state interest or a reasonable relation to the protection of the state's interests or resources.

Therefore, we are of the opinion that the challenged classification does not have a rational connection with appellee's right to obtain a liquor license. Appellant has not sustained its burden of establishing that the classification, based as it is on the suspect factor of alienage, not only promotes a compelling interest but that it is necessary to further its purpose. In fact, appellant has, in our opinion, failed to establish any interest.

We hold that the classification created by A.R.S. Sec. 4–202(A) is invidious and wholly arbitrary. The discrimination, inherent in A.R.S. Sec. 4–202(A), denies arbitrarily to appellee, merely because of

---

3. In 1973, the Arizona Attorney General stated that on the basis of *Sugarman v. Dougall,* 413 U.S. 634, 93 S.Ct. 2842, 37 L. Ed.2d 853 (1973) and *In Re Griffiths,* supra, where the states were unable to show a substantial reason for refusing all public employment to non-citizens, "that the Arizona Constitution and statutes which prohibit the employment of aliens by public agencies are unconstitutional and have no force and effect. . . ."

Nothing in this opinion requires that agencies automatically grant employment to anyone. A resident alien need only be treated the same as a resident citizen. If the alien meets the job qualifications, such aliens must be considered on his merits and not upon his citizenship." Op.Att'y Gen. No. 73–19 (R–65).

his status as an alien, the right to pursue an otherwise lawful occupation. The statutory classification operates irrationally without reference to any legitimate state interest except that of favoring United States citizens over citizens of other countries. Since citizenship, under the circumstances here, cannot be made a prerequisite for obtaining a liquor license, the latter objective does not reflect such a compelling state interest that it would permit us to sustain this kind of discrimination.

A.R.S. Sec. 4-202(A) offends the Equal Protection Clause of the Fourteenth Amendment and, the superior court was correct in declaring it unconstitutional. Furthermore, it violates Art. 2, Sec. 13 of the Arizona Constitution in that aliens and citizens similarly situated are not treated alike and, as stated previously, reasonable grounds do not exist for the classification in the statute. *Garcia v. Arizona State Liquor Board,* supra.

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.