Mary Black filed suit for declaratory relief against the Pike County Commission and its members. Summary judgment was granted for the defendants.
The complaint alleges that she is denied due process and equal protection of the law under both state and federal constitutions because the County Commission arbitrarily and capriciously denied her application for a restaurant liquor license.
The issue is whether Tit. 29, § 13, Code of Alabama 1940 (now § 28-3-133, Code of Alabama 1975)[1] as construed in Paulson'sSteerhead Restaurant, Inc. v. Morgan, 273 Ala. 235,139 So.2d 330 (1962), grants to the County Commission the irrevisable discretion to deny approval of liquor licenses. We answer in the negative and reverse because the record contains some evidence that the Commission acted arbitrarily. Summary judgment was therefore inappropriate. We do not say that the Commission acted arbitrarily. We merely hold that a scintilla of evidence was presented to the trial court which precluded him from holding as a matter of law that the Commission was not arbitrary. Constitutional questions were presented which necessitate further development of the facts.
The record reveals that two other persons have a restaurant liquor license in Black's county district. According to Black, these people are no better qualified than she is. The record also shows that no application for a restaurant liquor license in Pike County has ever been denied approval, save her own. It also appears that the Pike County Commission has no criteria, written or unwritten, for deciding whether a person is qualified to obtain the Commission's approval for a restaurant liquor license.
The Commission relies on the statute as well as the decision of Paulson, supra, and Crowley v. Christensen, 137 U.S. 86,11 S.Ct. 13, 34 L.Ed. 620 (1890).
It is true that in Paulson this court held the legislature had granted irrevisable discretion to the city commission. It is important to note, however, that Paulson was a case of statutory construction only and no constitutional questions were raised in that case. The court specifically pretermitted the validity of the statute under constitutional provisions. Therefore, Paulson is not dispositive of the present issue.
Admittedly, there is some support for the Commission in the rationale employed by the court in Paulson. This is particularly so where this court quoted observations of the U.S. Supreme Court in Crowley, supra. The U.S. Supreme Court inCrowley, after much discussion of the evils and immorality of alcohol, nevertheless, bottomed its decision in upholding the San Francisco ordinance and denial of the license on the fact in evidence that the wife of the applicant frequented the applicant's saloon and cavorted with the patrons and had been convicted of the offense of larceny. She had been charged with other offenses. The Court said that these larcenies alone were a sufficient indication of the character of the place in which the business was conducted *Page 305 
for the exercise of the discretion of the police commissioners in refusing a further license to the applicant.
It is of particular interest to notice in Crowley the Court spent considerable time in an effort to distinguish the former case of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064,30 L.Ed. 220 (1886). In Yick Wo the City of San Francisco passed an ordinance which gave the board of supervisors authority, at their own discretion, to refuse permission to operate laundries except where located in buildings of brick or stone. The petitioner, a Chinaman who had been in business for 22 years along with 200 others similarly situated, petitioned the board to continue their business. Relief was denied by the board without assigning a valid reason. The U.S. Supreme Court granted relief. If, indeed, states have unbridled authority and may delegate irreversible discretion where liquor is involved, why was the Court troubled about distinguishing Yick Wo? In this vein, and of particular interest, is the following observation found in the Yick Wo case:
 "When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limitation of power. It is, indeed, quite true that there must always be lodged somewhere, and in some person or body, the authority of final decision; and in many cases of mere administration, the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion, or by means of the suffrage. But the fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts bill of rights, the government of the commonwealth `may be a government of laws and not of men.' For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."
The Twenty First Amendment bestowed upon the states broad regulatory power over the possession, sale, and distribution of liquor within their territory. Joseph E. Seagram Sons, Inc.v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336
(1966), and cases cited therein. The scope of the State's power to regulate the liquor business is much broader than in the case of its regulation of an ordinary lawful business. Crowley, supra; Glicker v. Michigan Liquor Control Com'n; 160 F.2d 96
(6th Cir., 1947).
However, the exercise of police powers in this area does not exempt the states or local government units from constitutional limitations; whether it be the Commerce Clause, the Due Process Clause, or the Equal Protection Clause. Craig v. Boren,429 U.S. 190, 97 S.Ct. 541, 50 L.Ed.2d 397 (1976); Joseph E.Seagram Sons, Inc. v. Hostetter, supra; Parks v. Allen,409 F.2d 210 (5th Cir., 1969); Glicker v. Michigan Liquor ControlCommission, supra. Other jurisdictions consider their equivalent to the Federal Equal Protection Clause to also be applicable to state and local decisions regarding liquor use, license, or distribution. See Arizona State Liquor Bd. of Dept.of L. Lic. C. v. Ali, 27 Ariz. App. 16, 550 P.2d 663 (1976);Safeway Stores, Inc. v. Nebraska Liquor Control Com'n,179 Neb. 817, 140 N.W.2d 668 (1966). *Page 306 
Sections 1, 6 and 22 of the Alabama Constitution combine to guarantee equal protection of the laws. City of Hueytown v.Jiffy Chek Co. of Alabama, 342 So.2d 761 (Ala., 1977). Governing bodies in the exercise of police power, may not arbitrarily deny citizens equal protection of the law. McCraneyv. City of Leeds, 241 Ala. 198, 1 So.2d 894 (1941). To the extent the rationale in Paulson allows such, by denying judicial review of an alleged violation of the law, it is revised.
The legislature may not bestow a power on a local governing body which it does not possess.
The burden of proving any unconstitutional action is upon Black. Wilkey v. State, 244 Ala. 568, 14 So.2d 536 (1943).
We are of the opinion that Black raises an issue as to the unconstitutionality of the Commission's actions. Accordingly, we reverse the decision of the trial court and remand for further proceedings.
REVERSED AND REMANDED.
BLOODWORTH, MADDOX, FAULKNER and BEATTY, JJ., concur.
[1] Tit. 29, Code of Alabama 1940 provides in pertinent part:
"§ 13. . . . Subject to the provisions of this chapter, and regulations promulgated under the provisions of this chapter, the board, with the approval of the governing authority of the municipality, if the . . . restaurant . . . be located in a municipality, or with the approval of the county governing authority, if the . . . restaurant . . . be located in the county and outside the limits of the municipality, shall have authority to issue a liquor license for any premises kept or operated by a . . . restaurant . . . and specified in the license . . .
"§ 14. . . . Every applicant for a . . restaurant liquor license . . . shall file a written application with the board . . . accompanied, also, by a certificate from the clerk or proper officer setting out that the applicant has presented his application to the governing authority of the municipality and has obtained its consent and approval. . . .
"§ 15. . . . Upon receipt of the application, the proper fees, the certificate of approval of the governing authority, and upon being satisfied of the truth of the statements in the application, and that the applicant is a person of good repute and seeks a license for a . . restaurant . . . as defined in this chapter, the board shall grant and issue the applicant a liquor license. . . ."