961 So.2d 827 (2007)
Larry Frank PHILLIPS, Sr.
v.
CITY OF CITRONELLE.
No. 2050610.
Court of Civil Appeals of Alabama.
January 12, 2007.
*828 Joe Carl "Buzz" Jordan and Missty C. Gray of Ross & Jordan, P.C., Mobile, for appellant.
Lawrence M. Wettermark, Andrew J. Rutens, and Erin B. Fleming of Galloway, Smith, Wettermark & Everest LLP, Mobile, for appellee.
PER CURIAM.
Larry Frank Phillips, Sr., appeals from a judgment of the Mobile Circuit Court upholding the denial of his application for an on-premises liquor license.
Phillips owned a parcel of land and a building located within the municipal limits of the City of Citronelle ("the City"), on U.S. Highway 45. Phillips contracted with a real-estate company to manage this property, and while the property was under the management of the real-estate company, two nightclubs opened and operated on Phillips's property under the trade names "Big Daddy's" and "The Hotspot." After those nightclubs closed and discontinued their operations, Phillips applied to the Alabama Alcohol Beverage Control Board ("the ABC Board") for an on-premises liquor license for a proposed nightclub on his property under the trade name "Joe Palooka's Lounge." The ABC Board sent the application to the City for its consideration. After a public hearing at which various residents of the City spoke in opposition to the application, the city council of the City unanimously denied Phillips's application for an on-premises liquor license "due to concerns about the safety and welfare of the area residents, along with traffic problems [with a nearby] grammar school."
Phillips then filed a complaint in the Mobile Circuit Court seeking a review of the decision of the city council; in his complaint, Phillips cited § 28-1-6, Ala. Code 1975, as authority for his action. The City filed an answer generally denying Phillips's allegations; notably, however, the City did not dispute the applicability of § 28-1-6.
The circuit court held an ore tenus proceeding on the complaint filed by Phillips. Henry Danny Daniels, a city council member, testified at trial that he had voted to deny Phillips's liquor-license application because he viewed the proposed nightclub as a likely detriment to the public safety and a nuisance. Daniels testified that the location of Phillips's property presented a safety concern because U.S. Highway 45 was a very busy two-lane highway and because a hill on the south side of Phillips's *829 property made it difficult for motorists who were traveling on that highway to see vehicles exiting Phillips's property onto the highway. Evidence also indicated that Phillips's property was located across the street from a school-bus stop and within one mile of two schools and that the hours of operation of the proposed nightclub would overlap with the hours of operation of the schools. Daniels admitted that other establishments in the City that sold alcohol were located within a mile of a school, but he testified that those establishments were different from Phillips's property because they were located on a four-lane road in close proximity to the City's center.
Daniels testified that he had determined that the proposed nightclub would be a nuisance to the residents in the area surrounding Phillips's property based on the number of people who were present in the council chamber to voice complaints associated with the operation of the previous nightclubs on the property and who had attended the meeting to oppose the liquor-license application. Certain residents of the City who had attended the city-council meeting also testified at trial regarding the numerous examples of nuisances and illegal behavior that had occurred during the operation of the nightclubs formerly located on the property.
David Chad Tucker, the City's assistant police chief, testified at trial that during 1998 and 1999 33 complaints had been filed in connection with incidents that had occurred on the property; incidents detailed in those complaints included, among other things, illegal firearm possession, cruelty to animals, assault, noise violations, public intoxication, theft of property, possession of marijuana, reckless endangerment, and murder. Tucker added that the 33 complaints did not represent the total number of calls to the City's police department for assistance associated with incidents that occurred at the nightclubs.
After considering the testimony and evidence, the circuit court entered a judgment in favor of the City. Phillips timely appealed to this court.
On appeal, Phillips contends that the decision of the City to deny his application for an on-premises liquor license was arbitrary and capricious. Specifically, Phillips posits that the city council had approved liquor licenses for other similarly situated businesses in the area and that he had no involvement with the operations of the previous nightclubs on his property associated with the complaints that were asserted at the city-council meeting.
The legislature has vested in the ABC Board the power to issue licenses permitting the sale of alcoholic beverages; however, the legislature has limited the ABC Board's power to issue a license to permit the sale of alcohol on premises located within municipalities. Ala.Code 1975, § 28-3A-11. A municipality has the "broad" discretion to approve or disapprove the issuance of liquor licenses with respect to locations within the municipality. See § 28-3A-11, Ala.Code 1975; Ott v. Everett, 420 So.2d 258, 260 (Ala.1982). However, the decision of the municipality in denying an application for a liquor license is subject to judicial review and is reversible if it is shown that the municipality acted arbitrarily in denying the application for a liquor license. See Black v. Pike County Comm'n, 375 So.2d 255 (Ala.1979); Inn of Oxford, Inc. v. City of Oxford, 366 So.2d 690 (Ala.1978); see also Hamilton v. Town of Vincent, 468 So.2d 145, 147 (Ala. 1985) (affirming trial court's judgment after finding that the liquor-license applicant had failed to carry burden of showing arbitrary and capricious action by licensing authority).
*830 Phillips asserted in the circuit court that he had a right to a de novo judicial review of the City's denial of his application for a liquor license under § 28-1-6, Ala.Code 1975. On appeal, however, Phillips has candidly conceded that § 28-1-6 may properly be applied only to decisions of class 1 and class 2 municipalities.[1] Under Alabama law, specifically § 110 of the Alabama Constitution of 1901 and Ala. Code 1975, § 11-40-12(a), municipalities are generally classified into eight "classes" based upon their 1970 federal census populations; in that regard, we note that the City's population as measured by the 1970 federal census was 1,935 persons (see Ala. Code 1940 (Recompiled 1958), vol. 14B, p. 1437). Under § 11-40-12(a), then, the City is a class 8 municipality; thus, neither § 28-1-6 nor § 28-1-7, a similar statute applying to certain class 4 municipalities, provided a mechanism under which the circuit court could have conducted a de novo review of the City's decision to deny Phillips's request for an on-premise liquor license.[2] Therefore, the circuit court's power to review the City's decision in this case is properly referable only to that court's common-law authority to issue writs of certiorari. See Sanders v. City of Dothan, 642 So.2d 437, 440 (Ala.1994) (when there is not a prescribed method, a petition for the common-law writ of certiorari is the appropriate method to obtain review when it is contended that a liquor license was revoked without cause); Ott v. Moody, 283 Ala. 288, 292, 216 So.2d 177, 180 (1968); and Southall v. Stricos Corp., 275 Ala. 156, 159, 153 So.2d 234, 237 (1963).
That said, in determining whether a circuit court has correctly reviewed a municipality's action upon a liquor-license application, this court is guided by the ore tenus standard of review. "When the testimony is presented ore tenus, the trial court's findings and conclusions thereon are given the same weight as the verdict of a jury, and will not be disturbed unless palpably wrong." Harrelson v. Glisson, 424 So.2d 591, 592 (Ala.1982) (affirming municipal action upon lounge liquor-license application); see also Black, 375 So.2d at *831 258 (affirming trial court's judgment entered after ore tenus liquor-license review proceeding where "its findings [were] supported by credible evidence, and [were] not clearly erroneous or manifestly unjust"). Under that standard, the circuit court's judgment in this case, which contains no express findings, will be affirmed "`if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.'" Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992) (quoting Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 13 (Ala.1989)).[3]
We must presume in this case that the circuit court's judgment is correct. There is substantial evidence to support that presumption in this case. The record reveals that considerations of public safety, among other things, were significant reasons for the City's decision to deny Phillips's application; specifically, a city council member identified as a reason for the denial the possibility of patrons pulling onto U.S. Highway 45 in an area where it is difficult for drivers to see. Evidence also indicated that the location of the proposed nightclub in close proximity to two schools and a school-bus stop could create traffic problems. That Phillips did not manage the nightclubs that formerly operated on his property and that some evidence was adduced indicating that similarly situated businesses were allowed liquor licenses in the City does not render the city council members' decision whimsical or unfounded. The city council had broad discretion to grant or to deny Phillips's liquor-license application, and with such considerations being present, it was not error for the circuit court to conclude that arbitrariness was not present in the council's decision. See Harrelson, 424 So.2d at 592 (ruling that arbitrariness was not present in decision to deny liquor license based on public-safety concerns associated with increased highway traffic in the vicinity). Thus, the circuit court's judgment is due to be affirmed.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
BRYAN, J., concurs in the result, without writing.
MURDOCK, J., dissents, with writing.
MURDOCK, Judge, dissenting.

I. Standard of Review

As a threshold matter, I note that even if the circuit court had jurisdiction of this case (see section II hereinbelow), I would still be unable to fully concur in the analysis provided by the main opinion. After explaining in detail why the circuit court's consideration of this matter was not to have been a de novo review (a conclusion with which I would agree if the case had properly been before the circuit court), the *832 main opinion proceeds to accord the circuit court's decision the same deference that it would be due if it had resulted from a de novo review in which the circuit court properly had received evidence ore tenus. As our Supreme Court explained in City of Mobile v. Simpsiridis, 733 So.2d 378 (Ala. 1999), a case properly involving the application of § 28-1-6, Ala.Code 1975, and its provisions for a de novo review by a circuit court in the event of a denial of a liquor-license application:
"The trial court's findings of fact are presumed to be correct when they are based on ore tenus evidence. Because § 28-1-6 provides for de novo review in the circuit court from the disapproval of an application for a license to sell alcohol, the usual presumption in favor of the findings by the city or administrative agency is not applicable here."
733 So.2d at 381-82. The Court further explained that the deference to be provided by the appellate court was to the decision of the circuit court, rather than the decision of the municipality. 733 So.2d at 382. In contrast to City of Mobile, there is no statutory basis available in the present case for the circuit court to have conducted a de novo hearing and therefore no basis for giving ore tenus deference to its decision.

II. Jurisdiction

In addition, I disagree with the analysis provided by the main opinion on a more substantive ground  one that compels me respectfully to dissent.
In Paulson's Steerhead Restaurant, Inc. v. Morgan, 273 Ala. 235, 139 So.2d 330 (1962), the Supreme Court discussed the unique nature of liquor licenses and the resulting broad discretion afforded local governing bodies in granting or denying such licenses. At the outset of an opinion affirming the trial court's refusal to issue a writ of mandamus directing the municipality to issue a liquor license, the Court explained that it did not understand the petitioner's argument to
"assert that the statute is invalid for the reason that it violates any constitutional provision, or for any other reason, and, therefore, we are not called upon and do not undertake to determine the validity of the statute.
"The question presented, as we understand it, is one of statutory construction."
273 Ala. at 237, 139 So.2d at 332. It was with that caveat that the Court proceeded to hold that Title 29, Ala.Code 1940, which contained the predecessor of § 28-3A-11, Ala.Code 1975, "grants to the municipal governing body an irrevisable discretion to grant or withhold its consent and approval of the issuance of a restaurant liquor license." 273 Ala. at 239, 139 So.2d at 334. As the Court explained, "[t]he discretion to approve or disapprove the issuance of a restaurant liquor license, conferred on the municipal governing body by Title 29, is irrevisable and is of the nature of a legislative discretion." 273 Ala. at 239, 139 So.2d at 333.[4]
*833 The main opinion in the present case, however, construes Black v. Pike County Commission, 360 So.2d 303 (Ala.1978), and Inn of Oxford, Inc. v. City of Oxford, 366 So.2d 690 (Ala.1978), as holding that decisions of municipalities denying applications for liquor licenses are subject to judicial review generally[5] and are reversible if in the trial court's view the municipality merely acted arbitrarily in denying the application. 961 So.2d at 829. It is true that the Supreme Court's opinion in Black v. Pike County Commission begins with the following statement:
"The issue is whether Tit. 29, § 13, Code of Alabama 1940 (now § 28-3-133, Code of Alabama 1975) as construed in Paulson's Steerhead Restaurant, Inc. v. Morgan, 273 Ala. 235, 139 So.2d 330 (1962), grants to the County Commission the irrevisable discretion to deny approval of liquor licenses. We answer in the negative and reverse because the record contains some evidence that the Commission acted arbitrarily."
360 So.2d at 304 (footnote omitted; emphasis added). It is clear, however, that the arbitrariness to which the Supreme Court referred as a basis for judicial reversal of the County Commission's decision denying a liquor license was arbitrariness that rose to the level of a constitutional concern. As the Supreme Court went on to explain in reversing the trial court's summary judgment in favor of the Commission:
"We . . . hold that a scintilla of evidence was presented to the trial court which precluded him from holding as a matter of law that the Commission was not arbitrary. Constitutional questions were presented which necessitate further development of the facts.

". . . .
"It is true that in Paulson this court held the legislature had granted irrevisable discretion to the city commission. It is important to note, however, that Paulson was a case of statutory construction only and no constitutional questions were raised in that case. The court specifically pretermitted the validity of the statute under constitutional provisions. Therefore, Paulson is not dispositive of the present issue."
360 So.2d at 304 (emphasis added).[6]
The holding of the other case primarily relied upon in the main opinion, Inn of *834 Oxford, Inc. v. City of Oxford, 366 So.2d 690, is similarly limited. In a case in which the evidence indicated that the City of Oxford was withholding approval of all liquor licenses in contravention of the decision-making authority and duty imposed upon it by the legislature, our Supreme Court explained:
"It is clear from the trial court's order that it believed that it had no authority to revise a decision of the City in withholding approval of a liquor license even though such action was arbitrary, capricious and systematic, because of this court's holding in Paulson's Steerhead Restaurant, cited in the order. That case did hold that a city's discretion in this area was `irrevisable.' That holding, itself, however, has, since this case was tried, been `revised.' In Black v. Pike County Commission, 360 So.2d 303 (Ala.1978), we held that § 28-3-133 as construed in Paulson's does not grant counties (nor municipalities) an irrevisable discretion to deny approval of liquor licenses. We noted that, while the scope of the state's power to regulate the sale of liquor is admittedly broader than its power to regulate an ordinary lawful business, even so, in the exercise of that power, neither the state nor local government units are exempt from constitutional limitations, whether it be the Commerce Clause, the Due Process Clause or Equal Protection Clause, citing Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Paulson's was overruled to the extent that it denied judicial review of violations of constitutional rights."
366 So.2d at 692 (emphasis added).
In the present case, the challenge to the City of Citronelle's decision denying a liquor license is not made on the basis of a constitutional violation. There are no allegations, for example, as there were in Innof Oxford, that the City is systematically denying all applications for liquor licenses regardless of their merits under the applicable statute. Indeed, it is clear that, in this case, the City has duly applied the statute and that the applicant, Phillips, merely challenges the City's exercise of its discretion in denying the license. It is this very exercise of discretion  discretion that our Supreme Court in Paulson's Steerhead Restaurant described as being in "the nature of legislative discretion"  that the Court held in Paulson's Steerhead Restaurant to be "irrevisable" by the judiciary.
The holding in Paulson's Steerhead Restaurant remains intact and is applicable to the City of Citronelle despite (a) the recognition in cases such as Black and Inn of Oxford, that constitutional challenges such as those presented in those cases are not foreclosed and (b) the provision by our legislature in §§ 28-1-6 and 28-1-7, neither of which is applicable here, for judicial review of decisions granting or denying liquor licenses by class 1, 2, and 4 municipalities.
Consequently, the circuit court was without jurisdiction to review the City's decision, and this court is, likewise, without jurisdiction to entertain an appeal of the circuit court's decision.[7]
*835 Phillips also cites the case of Hamilton v. Town of Vincent, 468 So.2d 145, 147 (Ala.1985), noting parenthetically that the Supreme Court affirmed a trial court's judgment after finding that the liquor license applicant had failed to carry the burden of showing arbitrary and capricious action by the licensing authority. The main opinion states that "[h]ad the trial court lacked jurisdiction to entertain the proceeding in Hamilton, the Supreme Court would have been obligated to raise that issue ex mero motu." 961 So.2d at 830 n. 1. In this regard, the main opinion assumes that, had the trial court in Hamilton lacked jurisdiction, the Supreme Court necessarily would have realized it. There is no indication in the Court's opinion in Hamilton that the question of the trial court's jurisdiction to take up the issue of the arbitrariness of the licensing authority's decision was raised or considered by the Court in that case. Moreover, the omission in Hamilton of any discussion of jurisdiction means that the Court's opinion does not constitute binding precedent for the proposition that the lower court had jurisdiction. "`For a case to be stare decisis on a particular point of law, that issue must have been raised in the action, decided by the court, and its decision made part of the opinion of the case; accordingly, a case is not binding precedent on a point of law where the holding is only implicit or assumed in the decision but is not announced.'" Alabama Dep't of Envtl. Mgmt. v. Town of Lowndesboro, 950 So.2d 1180, 1194 (Ala.Civ.App.2005) (quoting 20 Am.Jur.2d Courts § 153 (1995)).
NOTES
[1] Unlike the dissenting opinion, we do not perceive a defect in the circuit court's jurisdiction in this case. Our circuit courts are courts of general jurisdiction, and they are called upon to decide cases justly and inexpensively, to construe pleadings according to substantial justice, and to award any relief justified by the evidence presented to them. See generally Rules 1, 8(f), and 54(c), Ala. R. Civ. P.; see also Heatherly v. Kemsel, 504 So.2d 285, 286-87 (Ala.Civ.App.1986) (construing "appeal" taken without statutory authorization as if it were a certiorari proceeding). Moreover, Phillips specifically asserted in the circuit court that "[t]he decision of [t]he City . . . to deny the application . . . was arbitrary and capricious" and, as a component of his complaint, expressly sought a declaratory judgment to that effect, just as the applicant had done in Hamilton. Had the trial court lacked jurisdiction to entertain the proceeding in Hamilton, the Supreme Court would have been obligated to raise that issue ex mero motu and dismiss the appeal as being from a void judgment. E.g., Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 945 & n. 2 (Ala.1994).
[2] Indeed, a proper consideration of the provisions of § 11-40-12(a) leads inexorably to the conclusion that the sole Alabama municipalities to which §§ 28-1-6 and 28-1-7 apply are Birmingham, Mobile, and Tuscaloosa. See Ala.Code 1940 (Recompiled 1958), vol. 14B, p. 1438. To the extent that State Alcoholic Beverage Control Board v. Shabani, 819 So.2d 46, 48 n. 1 (Ala.Civ.App.2000), and City of Montgomery v. Glenn, 749 So.2d 478, 479 (Ala.Civ.App.1999), intimate that an Alabama municipality may "grow into" or "shrink out of" a particular population class defined in § 11-40-12(a), Ala.Code 1975  a statute that, as we have noted, uses the 1970 federal census as its reference point  so as to move into or out of the scope of § 28-1-6 and § 28-1-7, those cases appear to be in error.
[3] To the extent that the dissenting opinion takes issue with our deference to the circuit court's decision on the basis that there is no clear statutory basis for that court's taking of additional evidence, we simply note that although certiorari review ordinarily involves a simple review of the record made before the agency that rendered a decision under review, our Supreme Court has yet to condemn a trial court in this setting for having taken evidence pertaining to whether a liquor-license denial is arbitrary or capricious, as Harrelson and Black indicate. See also Ex parte King, 364 So.2d 318 (Ala.1978) (allowing extraneous evidence to demonstrate arbitrariness on part of state agency despite silence of statute authorizing review of agency's decision). It is simply unnecessary for this court, in deciding this appeal, to forever resolve the tension between the duty of a trial court on certiorari to focus its review upon the record already made and its duty to ensure that a party has had a full opportunity to show whether the decision under review is arbitrary or capricious.
[4] The Paulson's Steerhead Restaurant Court quoted with approval from the United States Supreme Court's decision in Crowley v. Christensen, 137 U.S. 86, 91-92, 11 S.Ct. 13, 34 L.Ed. 620 (1890):

"` . . . There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a citizen of the state or of a citizen of the United States. As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority. That authority may vest in such officers as it may deem proper the power of passing upon applications for permission to carry it on, and to issue licenses for that purpose. It is a matter of legislative will only. As in many other cases, the officers may not always exercise the power conferred upon them with wisdom or justice to the parties affected. But that is a matter which does not affect the authority of the state, or one which can be brought under the cognizance of the courts of the United States.'"
273 Ala. at 239, 139 So.2d at 333-34.
[5] The main opinion asserts that the decision of a municipality denying a liquor license is subject to judicial review by way of a petition for a common-law writ of certiorari, a proposition for which I find no authority. See 961 So.2d at 833 n. 6, infra.
[6] In Black, "[t]he complaint allege[d] that [the applicant had been] denied due process and equal protection of the law under both the state and the federal constitutions because the County Commission arbitrarily and capriciously denied her application for a restaurant liquor license." 360 So.2d at 304. The case of Sanders v. City of Dothan, 642 So.2d 437 (Ala.1994), cited in the main opinion to support the notion that the City of Citronelle's decision is "revisable" by way of a writ of certiorari dealt with judicial review of the denial of a business license, not a liquor license. Further, the cases of Ott v. Moody, 283 Ala. 288, 216 So.2d 177 (1968), and Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963), and the other cases cited in Sanders v. City of Dothan, do not involve the denial of liquor licenses by municipalities or county commissions. Rather, Ott and Southall addressed the reviewability by means of a petition for a writ of certiorari of an action by the Alabama Alcoholic Beverage Control Board seeking to revoke a liquor license. The Supreme Court, in Southall, noted that the statute governing the board's actions limited its ability to revoke liquor licenses to cases involving "cause" or "sufficient cause" and, therefore, judicial review was contemplated by the legislature under that statute.
[7] The main opinion appears simply to treat Phillips's appeal as if it were a petition for a common-law writ of certiorari; it was not. Even if it had been, none of the cases relied upon in the main opinion suggest that a review of the municipality's action is available by way of a petition for a common-law writ of certiorari. Further, the availability of such review, at least in a case of the nature presented, would be inconsistent with the discretion of the governing body being "irrevisable."