In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2495

LEBAMOFF ENTERPRISES, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

BRUCE V. RAUNER, *et al.*,

*Defendants-Appellees*,

*and*

WINE & SPIRITS DISTRIBUTORS OF ILLINOIS,

*Intervening Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 8607 — **Samuel Der-Yeghiayan**, *Judge*.

ARGUED FEBRUARY 16, 2018 — DECIDED NOVEMBER 28, 2018

Before WOOD, *Chief Judge*, and KANNE and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. The Twenty-first Amendment to the U.S. Constitution brought Prohibition to an end with a compromise: section 1 repeals the Eighteenth Amendment, but section 2 hands some power back to the states insofar as it forbids the "transportation or importation" of liquor into a state in violation of that state's law. This post-Prohibition compromise gives the states greater leeway to regulate alcoholic beverages than they enjoy with respect to any other product. But the Supreme Court has decided that this leeway is not boundless. Drawing lines that are sometimes difficult to follow, it has decreed that states may not infringe upon other provisions of the Constitution under the guise of exercising their Twenty-first Amendment powers.

In recent years, there has been considerable litigation over the proper boundary between lawful exercise of Twenty-first Amendment powers and unlawful economic protectionism. Indeed, the Supreme Court now has before it a case posing the question whether the Twenty-first Amendment permits states to regulate liquor sales by limiting retail and wholesale licenses to persons or entities that have resided within the state for a specified time. See *Tennessee Wine & Spirits Retailers Ass'n v. Byrd*, No. 18-96, *cert. granted*, 2018 WL 3496882 (Sept. 27, 2018).

It is quite possible that the Court's disposition of *Tennessee Wine* will affect the issue now before us. But the question in that case differs from the one now before us, and these differences often matter to the analysis. Our case involves the ability of companies to *ship* alcoholic beverages to consumers in Illinois; it does not directly address licensure for retail or wholesale establishments. Illinois allows retailers with an in-

state physical presence to ship alcoholic beverages to consumers anywhere within Illinois. The state refuses, however, to give out-of-state businesses the opportunity even to apply for a similar shipping license. The plaintiffs argue that this difference in treatment violates the Commerce Clause and Privileges and Immunities Clause of the Constitution. Illinois responds that these restrictions fall within its reserved powers under the Twenty-first Amendment and in any event are necessary to protect its legitimate interests in the health and well-being of Illinois residents. The district court accepted Illinois's reasoning and dismissed the case with prejudice. We conclude that it was too quick to do so in the face of material contested issues about the necessity for and justifications behind the Illinois statute. We therefore reverse, but with the caveat that there are other aspects of the Illinois law—not before us at present—that will be difficult for plaintiffs to surmount if *Tennessee Wine* does not come out in their favor.

## I

The Illinois Liquor Control Act of 1934, 235 ILCS 5/1-1, *et seq.*, subject to some exceptions not pertinent here, requires any person who sells or transports alcohol in the state to obtain a license from the Illinois Liquor Control Commission. 235 ILCS 5/2-1. Like most states, Illinois divides merchants into three tiers. Licensed producers (tier 1) sell to licensed distributors (tier 2), who then sell to licensed retailers (tier 3), who in turn sell to consumers. Each tier is heavily regulated. Various specialized licenses are available on all three tiers of the system, and many of those licenses are exclusive, meaning that they preclude the holder from obtaining different types of licenses within the system. See 235 ILCS 5/5-1. The strict separation between license holders on each tier of the system

was originally seen as part of a broader set of rules preventing so-called tied houses, which were vertically integrated organizations. See Federal Alcohol Admin. Act, sec. 5(b), 27 U.S.C. § 205(b). (This law reflected broader hostility to vertical arrangements that has since been abandoned by the Supreme Court. See, *e.g., Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007).)

The Illinois statute bars anyone from shipping or transporting "any alcoholic liquor from a point outside this State to a person in this State who does not hold a manufacturer's, distributor's, importing distributor's, or non-resident dealer's license issued by the Liquor Control Commission." 235 ILCS 5/6-29.1(b). Put more simply, subject to certain exceptions, any alcohol shipped to Illinois must go through a distributor on the second tier of the three-tier system. Additionally, the out-of-state shipper must itself be licensed in Illinois. See 235 ILCS 5/2-1; Ill. Admin. Code tit. 11, § 100.480(a) ("[N]o person shall import alcoholic liquor into this State for a non-personal or commercial use without first obtaining a license to import issued by the Commission."). These restrictions ensure that all liquor sold to consumers at tier three is first funneled through the top two tiers. See *Granholm v. Heald*, 544 U.S. 460, 489 (2005).

Licensees at the third tier—retail—must have a physical location in Illinois. 235 ILCS 5/6-2(a)(1); see also 235 ILCS 5/6-29.1(b) (prohibiting "the shipping or transportation of any alcoholic liquor from a point outside this State to a person in this State" who does not hold a valid Illinois license). A retailer's license allows "the licensee to sell and offer for sale at retail, only in the premises specified in the license, alcoholic liquor for use or consumption, but not for resale in any form."

235 ILCS 5/5-1(d). Section 5-1(d) provides that "[n]othing in Public Act 95-634 [now codified at section 6-29.1(b)] shall deny, limit, remove, or restrict the ability of a holder of a retailer's license to transfer, deliver, or *ship* alcoholic liquor to the purchaser for use or consumption subject to any applicable local law or ordinance." 235 ILCS 5/5-1(d) (emphasis added). In other words, Illinois-licensed retailers may ship to customers statewide, unless local law stands in the way. Taken as a whole, Illinois's laws establish the difference in treatment that is at issue in this suit: in-state retailers can obtain a license to ship products to Illinois consumers, but out-of-state retailers cannot, for the simple reason that they are out-of-state and so by definition do not satisfy the physical-presence requirement.

The plaintiffs filed this suit in 2016, contending that the Illinois statutory scheme violates both the Commerce Clause and Privileges and Immunities Clause by discriminating against out-of-state economic interests. Two of them—Lebamoff Enterprises and its co-owner Joseph Doust—operate a wine store in Fort Wayne, Indiana. Lebamoff says that it would obtain a license to make direct shipments to Illinois residents if it were allowed to do so. The third plaintiff, Irwin Berkley, is an Illinois resident who is a regular purchaser of fine wine; he complains that his access to rare wines is curbed by the Illinois statutory scheme. Without traveling outside of the state, he is limited to whatever the Illinois retailers can send him. Consumers are often forced to travel to New York or California in order to obtain access to the full panoply of wines available from specialized retailers.

The state defendants promptly moved to dismiss. The district court viewed the complaint as a challenge to Illinois's

three-tier system writ large and granted the motion, dismissing the case with prejudice. The plaintiffs now appeal both the district court's decision dismissing the case and its denial of leave to amend the complaint. Because the only valid basis for the district court's denial of leave to amend was futility, we consider both decisions *de novo*, *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015).

## II

We start with the relation between the Commerce Clause and the Twenty-first Amendment. The Commerce Clause grants Congress the power to "regulate Commerce … among the several States." U.S. CONST. Art. 1, § 8, cl. 3. The positive grant of power implies that "state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm*, 544 U.S. at 472 (quoting *Ore. Waste Sys., Inc. v. Dep't of Envtl. Quality of Ore.*, 511 U.S. 93, 99 (1994)). Laws that directly discriminate against interstate commerce are "generally struck down … without further inquiry," while those that only indirectly affect interstate commerce are subject to a balancing test. *Lebamoff Enters., Inc. v. Huskey*, 666 F.3d 455, 460 (7th Cir. 2012) (quoting *Granholm*, 544 U.S. at 487). The plaintiffs argue that the Illinois law falls into the former camp and thus must be struck down out of hand.

The evident problem with their argument is that this is not a pure Commerce Clause case. It also involves the Twenty-first Amendment, which qualifies the Commerce Clause. Section 2 of the Twenty-first Amendment states that "[t]he trans-

portation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST. amend. XXI, § 2. While early cases suggested that the Twenty-first Amendment "pro tanto 'repealed'" the Commerce Clause with respect to liquor, the Supreme Court has since rejected that theory as "patently bizarre and … demonstrably incorrect." *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332 (1964). Instead, "[l]ike other provisions of the Constitution," the Twenty-first Amendment and the Commerce Clause "must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case." *Id.* In the decades since *Hostetter*, courts have tried to reconcile these constitutional commands through a two-step inquiry: (1) does the state law violate the Commerce Clause, and if so (2) does the Twenty-first Amendment save the otherwise impermissible law? *Lebamoff Enters.*, 666 F.3d at 460.

A

The Commerce Clause analysis in this case is straightforward. Illinois allows in-state retailers to obtain a license to ship their products anywhere in the state; it prohibits out-of-state retailers from obtaining an analogous license. Twenty-first Amendment considerations aside, this is precisely the sort of discrimination against out-of-state economic interests that is typically "struck down … without further inquiry." *Granholm*, 544 U.S. at 487 (quoting *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579 (1986); see also *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) ("The clearest example of such legislation is a law that

overtly blocks the flow of interstate commerce at a State's borders."). The Supreme Court has "viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere." *Granholm*, 544 U.S. at 475 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 145 (1970)).

Illinois defends its statutory scheme on several grounds. First, it argues that its law does not facially discriminate against out-of-state retailers because the "provisions impose delivery and shipment restrictions on *all* retailers and the alcoholic liquors that they sell." In effect, Illinois argues that because all retailers are barred from shipping from out-of-state, the provision does not discriminate against out-of-state retailers. For example, a retailer with locations in both Illinois and Indiana could not ship wine to an Illinois customer from the Indiana location. But one cannot define the problem away so facilely. On its face, Illinois law distinguishes between in-state and out-of-state parties for purposes of the right to ship to Illinois residents. This case is therefore not like *Baude v. Heath*, 538 F.3d 608 (7th Cir. 2008), where pursuant to the "face-to-face" clause any customer who wanted direct shipments of wine from any winery *in or out of Indiana* was subject to the same visitation regime. We found no discrimination in that system, and thus upheld that part of the state's law.

That cannot be said about the part of Illinois's system under attack here. Even assuming (counterfactually) that section 6-29.1(b)'s shipping ban is facially even-handed, we must still contend with section 6-2 and 5-1(d), whose licensing requirements are not so benign. 235 ILCS 5/5-1, 5/6-2. Limiting licenses to in-state storefronts might make sense if all sales had to be on an in-person basis. The great majority of out-of-state

retailers would have no use for such a license, and the failure of the state to offer it would raise no eyebrows. But once the license allows a store to ship product anywhere within the state, refusing to extend that privilege to out-of-state businesses is facially discriminatory.

B

The question is thus whether the Twenty-first Amendment saves Illinois's law. Despite the seemingly broad language of the Amendment, the Supreme Court has indicated that its protection is more limited than meets the eye. In 1984, the Court invalidated a Hawaii law exempting two local spirits from taxation. *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263 (1984). State laws "enacted to combat the perceived evils of an unrestricted traffic in liquor" are worthy of deference, the Court said, but "laws that constitute mere economic protectionism" are not. *Id.* at 276. The *Bacchus* Court thought that "the tax violates a central tenet of the Commerce Clause but is not supported by any clear concern of the Twenty-first Amendment." *Id*. The Court later invalidated state laws that effectively required producers to fix prices based on the prices offered in other states. *Brown-Forman*, 476 U.S. 573; *Healy v. Beer Inst.*, 491 U.S. 324 (1989). Expanding on an increasingly common theme, the Court said that it was troubled by the lack of a "neutral justification for this patent discrimination." *Id.* at 341. We read these cases to dictate that the Twenty-first Amendment can save an otherwise discriminatory regulation only if it "is demonstrably justified by a valid factor unrelated to economic protectionism." *Id*. at 340–41.

The Supreme Court returned to the issue in 2005 in *Granholm*. There it invalidated state laws that drew a distinc-

tion between in-state and out-of-state winemakers by allow-ing the in-state group to ship directly to consumers (bypass-ing wholesalers and retailers) but requiring the out-of-staters to sell through the typical three-tier system. The present case requires us to deconstruct *Granholm* and see what light it may shed on the Illinois law. The state points to *dicta* in *Granholm* stating that the Court has "previously recognized that the three-tier system itself is 'unquestionably legitimate.'" *Granholm*, 544 U.S. at 489 (quoting *North Dakota v. United States*, 495 U.S. 423, 432 (1990) (plurality)).

Illinois infers from this language that any legal challenge threatening any application of the three-tier system must fail because of the Twenty-first Amendment. The state sees in *Granholm* a rule according to which the Commerce Clause protects out-of-state producers, but not retailers or wholesal-ers. The plaintiffs contend that *Granholm* did no such thing. Even taking the Twenty-first Amendment into account, they reason, in-state presence requirements are almost always for-bidden. See *id.* at 474–75. *Granholm* is not to the contrary, they say, because the case before the Court was limited to produc-ers (*i.e.* wineries). The Court did not draw the distinction the state proposes between producers, on the one side, and wholesalers and retailers, on the other side, for the simple rea-son that it had no occasion to do so.

Given the financial stakes, it is unsurprising that the par-ties before us are not the first to grapple over the content of the law after *Granholm*. Courts have split over the best read-ing. Some see *Granholm* as establishing a rule immunizing the three-tier system from constitutional attack so long as it does not discriminate between in-state and out-of-state *producers* or

*products*. The idea is that the Twenty-first Amendment overrides the Commerce Clause and permits states to treat in-state retailers and wholesalers differently from their out-of-state equivalents. *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185, 190–91 (2d Cir. 2009); *Brooks v. Vassar*, 462 F.3d 341, 352 (4th Cir. 2006) (Niemeyer, J., writing only for himself)); *Southern Wine & Spirits of Am., Inc. v. Division of Alcohol & Tobacco Control*, 731 F.3d 799, 809–10 (8th Cir. 2013). More courts have read *Granholm* simply to reaffirm a general non-discrimination principle, although the principle may carry greater or lesser weight at different tiers of a three-tier system. *Brooks*, 462 F.3d at 354; *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 743 (5th Cir. 2016); *Byrd v. Tenn. Wine & Spirits Retailers Assoc.*, 883 F.3d 608, 618 (6th Cir. 2018); *Siesta Vill. Mkt., LLC v. Granholm*, 596 F. Supp. 2d 1035, 1039 (E.D. Mich. 2008); *Peoples Super Liquor Stores, Inc. v. Jenkins*, 432 F. Supp. 2d 200, 221 (D. Mass. 2006). Finally, one judge understands *Granholm* to preclude any Twenty-first Amendment protection for state laws that otherwise violate the dormant Commerce Clause. *Brooks*, 462 F.3d at 361 (Goodwin, J., concurring in part and dissenting in part).

Illinois, like the Second and Eighth Circuits, focuses on a paragraph in *Granholm* in which the Court concludes that "[s]tate policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent." 544 U.S. at 489. This, along with the Court's comment that the three-tier system is "unquestionably legitimate," *id.*, means (Illinois asserts) that *Granholm*'s nondiscrimination principle is limited to discrimination against producers.

We are not persuaded. The interpretation of *Granholm* for which Illinois argues fails to read the Court's statements in

light of the opinion as a whole. See *Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 321–22 (7th Cir. 2015) (noting that several passages of *Granholm* "cannot be read in isolation"). At the start of Part III.C of its opinion, the Court extracts three principles from its Twenty-first Amendment case law: (1) the Amendment does not save state laws that violate other provisions of the Constitution (*i.e.* clauses other than the Commerce Clause), (2) the Amendment "does not abrogate Congress' Commerce Clause powers with regard to liquor," and (3) "state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause." *Granholm*, 544 U.S. at 486–87. In the next two paragraphs, the Court rejects an invitation to overrule the third principle or limit it to the facts of *Bacchus*. *Id.* at 487–88. Only after this extended discussion of its prior cases does the Court comment that "the three-tier system itself is unquestionably legitimate," *Id.* at 489 (internal quotation marks omitted), in a paragraph fending off concerns about the potential breadth of its ruling.

None of this addresses the propriety of singling out the producer tier for special treatment. It follows a passage announcing three general principles from prior case law and declining to *limit* those principles to the facts of those earlier cases. We will not assume that the Supreme Court, without saying so directly, announced a new bright-line rule creating different constitutional treatment for the producer tier, on the one hand, and the lower two tiers, on the other. Indeed, such a rule would be inconsistent with the general principles the Court had just set out. A strict limitation of the Commerce Clause to the producer tier is difficult to square with *Healy* and *Brown-Forman*, both of which the Court read as helping

to establish the "nondiscrimination principle of the Commerce Clause" with respect to state regulation of alcohol. *Granholm*, 544 U.S. at 487. *Healy* involved importers and shippers, not just producers, 491 U.S. at 327–31, and *Brown-Forman* states that "[e]conomic protectionism is not limited to attempts to convey advantages on local merchants; it may include attempts to give local consumers an advantage over consumers in other States." 476 U.S. at 580. Read together, *Healy*, *Brown-Forman*, and *Granholm* actually contradict a producers-only rule. "A fair reading of this passage leads to one conclusion: the Supreme Court discussed the relationship between the dormant Commerce Clause and the Twenty-first Amendment in the context of 'producers' simply because *Granholm* involved statutes addressing that step in the three-tier system." *Byrd*, 883 F.3d at 621.

There are also serious problems with reading *Granholm* to protect against discrimination only in the parts of the three-tier system that are not "inherent" or "integral" to its existence. Prime among them are the fuzziness and impracticality of such a line. "There is no archetypal three-tier system from which the 'integral' or 'inherent' elements of that system may be gleaned." *Southern Wine & Spirits of Am.*, 731 F.3d at 810. States successfully have implemented varying regulatory schemes. Missouri, for example, has four tiers; the usual three, plus one for "solicitors." *Id.* at 802. And how are we supposed to decide which parts of Illinois's scheme are "integral"? We count 30 categories of licenses and permits in section 5-1 alone. Is an airplane license subject to constitutional challenge while an ordinary retail license is not? See 235 ILCS 5/5-1. Even setting aside the administrative problems posed by this approach, there is no reason to think that the Twenty-first Amendment accords privileged status to only one form of

state liquor regulation. The Amendment gives states the power to structure their liquor distribution systems; it does not give states that adopt one structure over another outsized deference.

The better understanding of *Granholm* is that it simply reaffirmed the position first announced in *Bacchus*. As the Fourth Circuit summarized, "these cases stand for the proposition that a State's regulation of the transportation, importation, and use of alcoholic beverages in the State is protected by the Twenty-first Amendment, but economic protectionism is not … ." *Brooks*, 462 F.3d at 354. To be sure, the Supreme Court reaffirmed in *Granholm* that most aspects of the three-tier system pass constitutional muster. Among other things, the state can require licenses at each tier of the system or route liquor through wholesalers "to promote temperance or to carry out any other purpose of the Twenty-first Amendment." *Bacchus*, 468 U.S. at 276. But when the state creates exceptions to the system or modifies the rights that come with licenses in the system, those modifications must not offend the Commerce Clause (or any other constitutional provision). By allowing statewide *shipments*, Illinois has signaled that it is not quite so concerned about face-to-face sales. At the same time, it has made its retailer licenses attractive to out-of-state businesses while barring those businesses from obtaining a license solely on the basis of state residency.

*Granholm*'s acceptance of the three-tier system as a general matter does not say anything about these aspects of Illinois's regulatory choice. We must thus examine "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the

regulation may prevail, notwithstanding that its require-
ments directly conflict with express federal policies." *Byrd*,
883 F.3d at 614 (quoting *Bacchus*, 468 U.S. at 275–76).

The district court did not conduct this inquiry because it
took the plaintiffs' challenge to be one to the three-tier system
as a whole. This was error. It should have asked whether Illi-
nois has justified requiring an in-state presence for retailers
now that it allows state-wide mail-order sales. (We note that
distance from the store is not a promising theory: downtown
Chicago, in northeastern Illinois, is 370 miles from Cairo, in
far southern Illinois, while it is just 24 miles from downtown
Hammond, Indiana.) Perhaps Illinois can show that the dif-
ferential treatment is *necessitated* by permissible Twenty-first
Amendment interests, but this sort of inquiry is ill-suited for
the motion to dismiss stage. The consolidated cases in
*Granholm* were both decided after summary judgment, 544
U.S. at 470–72, and the Illinois statute itself shows why evi-
dence is crucial to evaluate the constitutionality of the statute.
The interstate shipment provision decries "direct marketing"
of liquor as a "serious threat" not only to the health of state
residents, but also "to the economy of this State." 235 ILCS
5/6-29.1(b). The first reason touches the core of the Twenty-
first Amendment, while the second smacks of protectionism.
Interestingly, Illinois previously allowed out-of-state wine re-
tailers to make sales by shipment. See 235 ILCS 5/6-29 (1991),
*amended by* Ill. Legis. Serv. P.A. 95-634 (eff. June 1, 2008) (af-
fording reciprocal wine shipment privileges). Illinois must
show why its restrictions are necessary to further the first ob-
jective, and not just the second.

Illinois argues that any factual development is a fool's er-
rand, because lifting the in-state presence requirement and

out-of-state shipment ban would not give the plaintiffs any real relief. The reason this is so, according to the state, is that it would be impossible for a hypothetical out-of-state licensed retailer to comply with other aspects of the regulatory scheme. In particular, it says, as long as Illinois is entitled to insist that retailers authorized to sell in Illinois must buy all their stock from Illinois wholesalers, the out-of-state retailers would gain exactly nothing by winning this suit. They would simply be blocked from the market at a different stage. The Second Circuit found a similar practical impossibility argument persuasive when addressing a similar New York law. *Arnold's Wines*, 571 F.3d at 192 n.3. But just as we part from the Second Circuit's analysis of *Granholm* as limited to producers, we do the same on this point.  First, the legality of those restrictions is contestable, as the Supreme Court's grant of review in *Tennessee Wines* illustrates. Second, it is not clear that the other regulatory hurdles facing out-of-state retailers favor the state's position. If Illinois can limit the dangers of mail-order sales through other requirements, why does it need to discriminate against interstate commerce and flatly bar out-of-state retailers from obtaining a license?

It is too early in this case to provide definitive answers to those questions. All we can say is that the record is not developed enough at this point to allow us to say definitively that there is no possibility of effective relief. We are reluctant to short-circuit the adversary process on such a central point. Perhaps some out-of-state retailers could still find a way to comply and compete on equal terms with Illinois retailers, or perhaps they could not; these issues have not been developed properly. Nor do we consider the question about the compatibility of these remaining barriers with the Commerce Clause

and the Twenty-first Amendment to be properly before us at this time.

Aside from the Second Circuit, which relied on the producer-exception reading of *Granholm*, no circuit has addressed a statute allowing in-state retailers to make direct shipments to consumers throughout the state while prohibiting out-of-state retailers from doing so. The Fifth Circuit has upheld a statute allowing retailers to make local deliveries as "a constitutionally benign incident of an acceptable three-tier system." *Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809, 820 (5th Cir. 2010). But local deliveries are different in kind from state-wide deliveries through a carrier. The former delivery scheme is logically tied to an in-state presence (how else would the deliveries be accomplished locally?), while the latter form of delivery makes an in-state presence unnecessary. *Cf. Granholm*, 544 U.S. at 475 (noting the "suspicion" accorded to state laws requiring in-state presence for operations "more efficiently … performed elsewhere") (quoting *Pike*, 397 U.S. 15 145). The Eighth Circuit upheld a wholesaler residency requirement, but in that case the plaintiff's "protectionist-intent argument" was waived. *Southern Wine & Spirits of Am.*, 731 F.3d at 807. By contrast, this case involves state-wide deliveries and a statute that frankly admits some degree of protectionist intent. On remand, the parties can further explain how these differences in Illinois law should weigh on the scales.

The plaintiffs have successfully alleged a violation of the dormant Commerce Clause, and on the pleadings the Twenty-first Amendment does not bar their challenge. The Commerce Clause claim should therefore not have been dismissed.

### III

The plaintiffs also argue that Illinois's scheme violates the Privileges and Immunities Clause. That clause provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States," U.S. CONST. art. IV, § 2, cl. 1. It protects those privileges and immunities that are "fundamental," meaning that it does not categorically prevent states from using state citizenship or residency as a distinguishing factor. *McBurney v. Young*, 569 U.S. 221, 226 (2013). Before Prohibition and its repeal, the Supreme Court held in several cases that state laws regulating, or even prohibiting, liquor sales did not violate the Fourteenth Amendment's Privileges or Immunities Clause. See, *e.g.*, *Crowley v. Christensen*, 137 U.S. 86, 91 (1890); *Mugler v. Kansas*, 123 U.S. 623, 657 (1887). The ground shifted, however, with the passage of the Twenty-first Amendment. There is scant precedent considering the interaction of the Privileges and Immunities Clause and the Twenty-first Amendment. What we do know is that "state laws that violate other provisions of the Constitution are not saved by the Twenty-first Amendment." *Granholm*, 544 U.S. at 486–87 (cataloging cases applying the First Amendment, Establishment Clause, Equal Protection Clause, Due Process Clause, and Import-Export Clause to liquor regulations). Although we are dubious that the plaintiffs can overcome the Court's consistent narrow view of the Fourteenth Amendment's Privileges or Immunities Clause, see the *Slaughter-House* Cases, 83 U.S. 36, 74–75 (1872), they should have the opportunity to try.

Before leaving this subject, we note that even if a fundamental privilege or immunity is burdened, the state can justify differential treatment if "(i) there is a substantial reason

for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Id.* at 284. This balancing test would allow for Twenty-first Amendment considerations to be brought to bear, but just as with the Commerce Clause claim, it is premature to balance these interests at this early stage in the litigation. And there is one more important difference from the Commerce Clause analysis: corporations are not protected by the Privileges and Immunities Clause. *Paul v. Virginia*, 75 U.S. 168, 180–81 (1868). Doust is a co-owner of Lebamoff Enterprises, and it is unclear on this record whether he conducts any business individually, or if all of it is conducted through the corporate form. If it is the latter, his Privileges and Immunities Clause theory may be doomed to fail, but a definitive answer must await further development of the record.

## IV

The plaintiffs have stated a claim that Illinois's refusal to license retailers without an in-state presence violates the Commerce Clause and Privileges and Immunities Clause. Because both their initial complaint and proposed amended complaint met that bar, we do not separately reach the question whether leave to amend should have been granted. The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.